Zenebe **GETE**, Michael Hughes, Olga Froehlich, Dallas Julien, Binay Gounder, Bimal Chand, Dale Racine, Balvinder Maan, Ravinder Maan, and John Lackner, on behalf of themselves, individuals and on others similarly situated, Plaintiffs–Appellants,

v.

**IMMIGRATION AND NATURALIZATION SERVICE**, Stanley Johnson, Regional Commissioner, USA, Defendant–Appellee.

No. 95–35408.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 12, 1996.

Decided Aug. 4, 1997.

---

Robert Pauw, Seattle, WA, for plaintiffs-appellants.

Michael E. Robinson, Washington, DC, for defendant-appellee.

Before: REAVLEY,* REINHARDT, and WIGGINS, Circuit Judges.

Opinion by Judge REINHARDT; Dissent by Judge REAVLEY.

REINHARDT, Circuit Judge:

This case involves the seizure and administrative forfeiture of property by the Immigration and Naturalization Service ("INS") from a number of people who, on the basis of the record before us, appear to have been guilty of nothing more than honest mistakes. It also involves the administrative review of forfeitures under procedures lacking all semblance of due process. For the reasons set forth below, we hold that the district court erred in dismissing the plaintiffs' constitutional claims on the grounds of lack of jurisdiction and waiver, and that to the extent it reached the merits, it erred there as well. We further hold that the district court abused its discretion in denying the plaintiffs' motion for class certification.

## I. BACKGROUND

The ten named plaintiffs and the members of the putative class contend that they suffered similar treatment at the hands of the INS.[1] We provide two representative accounts in order to demonstrate the factual bases of their claims. Because this case comes before the court on appeal from the district court's dismissal of some claims and grant of summary judgment with respect to others, we view all factual disputes in the record in the light most favorable to the plaintiffs.

### A. Bimal Chand

Unfortunately for Bimal Chand, gasoline is cheaper in the United States than it is in Canada, and unfamiliar roads can be confusing. Chand, a Canadian citizen and a named plaintiff in this action, was travelling with his wife as part of a three-car caravan to a family picnic at Boundary Bay Beach, a Canadian recreation area near the United States border. Chand's parents and Suneeta

Prasad, a nanny employed by Chand's sister, rode in the lead vehicle. Chand's brother-in-law drove the second vehicle, and Chand drove the third—a car he owned. As the Chand family's vehicles approached the United States–Canada border, Chand's father decided to make a brief detour on the way to the picnic to take advantage of the lower prices on gas and groceries in the United States. Because Ms. Prasad was not a Canadian citizen—although she was residing there—and had no papers that would permit her legally to enter the United States, Chand's father pulled his car over to the side of the road near the Canadian Customs area and told her to get out and wait for his return; Chand's mother got out of the car also, and the two women then walked a short distance to a more comfortable spot.

Meanwhile, intending to go directly to the picnic site, but distracted by the detour made by the lead vehicle, Chand's brother-in-law turned down a road that ran between the United States and Canadian customs areas, and Chand followed. In doing so, they inadvertently passed the Canadian Customs area. Officer Chan, a United States customs official, flagged down Chand's car and directed him to pull off the road, although she did not stop the brother-in-law's vehicle. When Chand pulled over and got out of his car, Chan asked him if he had cleared United States customs and immigration. Chand told her that he had not done so because his destination was in Canada and he had no intention of entering the United States. Chan replied that he had already crossed the border, and instructed him to go to the United States customs station. By that time, Chand's mother and Ms. Prasad had seen him pull over, and had walked toward his car from the place where they were awaiting his father's return. Upon learning that Ms. Prasad was not a Canadian citizen and was not carrying documentation regarding her Canadian immigration status, Chan told the women to follow them to the customs area. When they got there, she seized the car for

---

* The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

1. For purposes of simplicity, throughout the opinion we use the term "the plaintiffs" to refer to the named plaintiffs and the putative class plaintiffs collectively.

an alleged violation of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1324(a).[2] She did not explain that Chand was entitled to challenge the seizure, nor did she tell him how he could attempt to recover his car. Even though Chand had pulled over to the side of the road only after being directed to do so, Ms. Prasad overheard Officer Chan remark that she was seizing the car because she suspected he had stopped to pick up the women illegally.

Subsequently, Chand received a letter from the INS informing him that he could post bond and challenge the seizure in court, with the government retaining possession of *both* the car *and* the bond throughout the litigation process, or that he could contest the forfeiture in an administrative "personal interview," for which no bond was required, although the INS would still hold the car pending the outcome of that proceeding. On the basis of the letter and his faith in the common sense of the INS, Chand selected the speedier, less costly administrative route rather than the slower, more complicated and far more expensive judicial one.[3]

Chand's "personal interview" consisted of nothing more than a couple of immigration officials talking to him briefly from behind a counter in a public area of a customs station. Perhaps not surprisingly, the summary meeting resulted in a determination that the vehicle was forfeited. Chand then filed petitions for "remission" and "mitigation" with the INS, as he was entitled to do under the applicable regulations. After a delay of several months, the INS finally agreed to grant the latter, which entailed Chand's payment of a fine and fees in the amount of $448.98 instead of the permanent loss of his vehicle.

Under the facts as we must view them, the innocent missing of a turnoff to a picnic site while on the way to a family gathering ended up costing Chand not only the use of his vehicle for a prolonged period of time and several hundred dollars in fines and fees, but also his job: Chand was fired because he was unable to get to work without his car. Thus, although Chand's father may have saved a few cents a gallon on gas by lawfully crossing the border to patronize a United States gas station, the ultimate cost to the family was out of all proportion to any benefits his trip may have yielded.

### B. Case Number 914 BLW 00114

If gas is cheap on the United States side of the border, words may be even cheaper, at least if they are not carefully analyzed by all involved. Mrs. Doe,[4] a member of the putative class, is a Canadian citizen whose car was forfeited because her husband followed the advice given by a United States consular official, at least as that advice was reported to him. According to the Does, their troubles began when two young girls arrived in Canada for a visit: the daughter of Mr. Doe's friend and business associate from England, and her travelling companion from Australia. The record does not disclose the age of "the girls," although the impression one receives is that they were probably teenagers. Mr. Doe is a Canadian business executive who conducts business abroad and has a number of European business associates. The girls were taking a trip around the world, and had intended to go sight-seeing in Northern British Columbia and the Yukon before completing their journey and returning to England. Because of gloomy weather in those parts of Canada, however, and enticed by the millions of dollars in advertising designed to lure both American and foreign tourists to Disneyland and Universal Studios, they decided to visit

---

2. Among other things, the INA provides for criminal penalties for any person who knowingly brings an "unauthorized" alien into the United States. 8 U.S.C. § 1324(a)(2). The penalty—seizure and forfeiture of the conveyance used in the commission of the violation—is prescribed by 8 U.S.C. § 1324(b).

3. Nowhere in the record is there any indication that Chand received written notification that he was being charged with illegally transporting Ms. Prasad across the border, although on a seized-

vehicle form in the INS' internal files Chan described the presence of Ms. Prasad under the heading "Facts to Establish Probable Cause." Chand was not permitted access to that information in conjunction with the administrative forfeiture proceeding.

4. The names of the vehicle owner and her husband are redacted in the record. They will be referred to as "Mrs. and Mr. Doe" throughout this opinion.

California instead. So, they went to the United States Consulate in Vancouver, British Columbia, to see whether they would be permitted to enter the United States. They reported to Mr. Doe that the consular official said they might not need visas if an adult Canadian citizen with whom they were staying took them across the border. Mr. Doe therefore agreed to drive them from Vancouver to Bellingham, Washington, and then to put them on a Greyhound bus to Los Angeles.

The night before the trip was to begin, Mrs. Doe's car (of which she was the registered owner and operator), developed a dead battery and required a jump start. As a result, Mrs. Doe drove her husband's car to work at the University of British Columbia the next morning because she was afraid that if she drove her own she would have a dead battery at the end of the day. Mr. Doe's vehicle was a company car. According to the record, Mr. Doe was a model citizen with no criminal record of any kind and Mrs. Doe had never known him to break the law in any way, so she did not hesitate to allow him to use her car to take the girls to the Bellingham Greyhound station.

In the meantime, the girls changed their plans and decided that, rather than taking the bus, they would ride to California with a friend who was driving there from Canada but was himself not a Canadian. Heeding the advice of the United States consular official, they had Mr. Doe drive them across the border and drop them off to wait for their friend. Mrs. Doe did not know anything about this new arrangement and did not accompany her husband across the border with the girls. At the United States customs station, a customs officer asked Mr. Doe where he was born and where he was going. He responded that he was born in Canada and was heading to Bellingham. He was not asked and did not volunteer that the girls

were not Canadian citizens and that he was going to drop them off so that they could get a ride to Disneyland. He now acknowledges with hindsight that he probably should have done so. After clearing the checkpoint, Mr. Doe deposited the girls in the United States and, upon ascertaining that their friend had arrived, drove on to a convenience store where he stopped on his way back to the border. With a zeal for the performance of their duties that one does not typically associate with most government employees, customs officials approached Mr. Doe at the store and seized Mrs. Doe's car. Mrs. Doe later received a copy of the INS form letter alleging a violation of 8 U.S.C. § 1324(b). She, like the other plaintiffs, elected the administrative option, rather than posting a bond[5] and subjecting herself to a judicial forfeiture proceeding with all its attendant delays. Subsequently, the INS forfeited her car and rejected her petition for mitigation. That was the last she ever saw of the vehicle—the only family-owned car.

## II. STATUTORY AND REGULATORY SCHEME

Entering the country in a vehicle without permission, whether by design or mistake, is not an offense for which a car may be forfeited under the INA. That Act provides for the forfeiture of vehicles only when the driver uses them to transport illegal aliens. *See* 8 U.S.C. § 1324(b). When seizing and forfeiting cars, boats, and planes, the INS must follow the rules governing seizure and forfeiture under customs law[6] insofar as they are consistent with the INA.[7] *See* 8 U.S.C. § 1324(b)(3).

When the INS initiates forfeiture proceedings, it sends the vehicle owner a form letter stating that his property has been seized, as well as copies of the INA and of the INS' regulations pertaining to judicial and admin-

---

5. Under the governing regulations, a vehicle owner electing judicial forfeiture must post bond in the amount of ten percent of the appraised value of the seized vehicle even though the INS also retains possession of the vehicle throughout the course of the litigation. *See* Part II *supra*. In Mrs. Doe's case, the bond would have been in the amount of $1257.50.

6. *See generally* 19 U.S.C. §§ 1600–1618; 19 C.F.R. §§ 162, 172.

7. In this opinion we deal only with civil and not with criminal forfeiture, *cf.* 21 U.S.C. § 853 (providing for criminal forfeiture of property involved in or derived from drug crimes), and the rights we discuss are those applicable to civil forfeiture proceedings.

istrative forfeiture. The notice, which is issued pursuant to 8 C.F.R. § 274.8, does not inform the owner which statutory provisions are alleged to have been violated, nor does it contain any statement of the factual basis for the claim that a violation of the INA occurred. In the case of forfeitures under customs law, on the other hand, the government must provide far more detailed notice, including both a statement of the provisions of law alleged to have been violated and a description of the specific acts or omissions forming the basis of the alleged violations. *See* 19 C.F.R. § 162.31(b)(1)-(2). Because the INS has its own notice regulations, it does not follow the more informative customs regulations.

The INS form letter advises those claiming an interest in the vehicle that they have two options: They may "commence" judicial forfeiture proceedings in federal district court [8] or they may proceed administratively by attending a personal interview with an immigration officer.[9] To invoke the judicial forfeiture process, they must file a claim of interest and post a bond of ten percent of the appraised value of the seized vehicle.[10] *See* 8 C.F.R. §§ 274.10, 274.12. Contrary to what one might suppose, posting bond does not entitle a vehicle owner to use his vehicle while the judicial proceedings are pending. Instead, the government retains possession of *both* the bond *and* the vehicle. *See* 8 C.F.R. § 274.10(c) ("The filing of a claim and a bond does not entitle the claimant to possession of the conveyance."). Because challenging a seizure in court is expensive and often involves not only posting bond but also hiring a lawyer, and because the government keeps the seized vehicle throughout the

course of the judicial proceedings, many if not most individuals opt to pursue their administrative remedies.

For those who elect to trust their fate, or at least their vehicle's, to the tender mercies of the INS and the administrative process, the heart of the forfeiture proceeding is the "personal interview" with an immigration officer. *See* 8 U.S.C. §§ 274.13–14. The interview is held in lieu of a traditional hearing. If the interviewing officer decides that the government lacked probable cause to seize the vehicle or if the owner proves to the officer's satisfaction that the vehicle is not subject to forfeiture because no violation of the law occurred, the officer is required to return it to the owner. *See* 8 C.F.R. § 274.5(c). If the officer decides that a violation occurred but the owner establishes that he "was not privy, or did not consent" to the illegal use of his vehicle and "took all reasonable steps to prevent [its] illegal use," the INS Regional Commissioner has discretion either to forfeit the vehicle anyway or to declare that it is in the best interests of justice not to pursue forfeiture, in which case the owner recovers the vehicle. *See* 8 C.F.R. § 274.5(c)(3); 8 C.F.R. § 274.5(d). In all other cases, the vehicle is automatically deemed forfeited.

Once the INS determines that a vehicle is forfeited, it issues a declaration to that effect without providing any explanation or statement of reasons. The former owner may then file two types of petitions for relief: a request that the forfeiture be remitted and the vehicle returned without penalty; and a request that the penalty be mitigated, i.e., that the vehicle be returned upon payment of a fine and fees. *See* 8 C.F.R. § 274.15–.16.

---

**8.** Although the form letter explains that the vehicle owner may "commence" judicial forfeiture by filing a claim and posting bond, the use of the term "commence" in that context is both inaccurate and illogical. A vehicle owner does not "commence" forfeiture of his own property; the government commences forfeiture, whether judicially or administratively. In contrast to the letter, the INS's regulations explain somewhat more precisely that the vehicle owner has the option to "obtain" judicial forfeiture. *See* 8 C.F.R. § 274.10. If the owner files a claim and posts bond, the INS Regional Commissioner must transmit the claim and bond as was as other relevant materials from its files to the Unit-

ed States Attorney for the district in which the seizure occurred. *See* 8 C.F.R. § 274.12. The United States Attorney then commences judicial forfeiture in the district court. *Id.*

**9.** In the case of a seized vehicle the value of which exceeds $500,000, no administrative option is available and the government is required to initiate judicial forfeiture proceedings in district court in the first instance. 19 U.S.C. § 1607.

**10.** The minimum bond is $250 and the maximum is $5000. 8 C.F.R. § 274.10(a)(3).

The regulations permit but do not require the Regional Commissioner to grant remission if the former owner can establish that he had no knowledge or reason to believe that the vehicle was being or would be used in violation of the law, that he had no knowledge that anyone using or able to use it had any "record or reputation," and that he "had taken all reasonable steps to prevent [its] illegal use." 8 C.F.R. § 274.15(a)(1)-(5). The Commissioner has discretion to grant mitigation if the petitioner establishes "that transfer of ownership of the forfeited vehicle to the petitioner promotes the interests of justice." 8 C.F.R. § 274.16(a). In adjudicating such petitions, the Commissioner will not reconsider an earlier determination by the INS that there was probable cause for a seizure and that a violation of the INA occurred. *See* 8 C.F.R. § 274.19(a).

When denying a request for mitigation or remission, the Regional Commissioner must issue a written determination setting forth the reasons for the denial. *See* 8 C.F.R. § 274.19(a)-(c). In actual practice, however, the INS provides the petitioner with nothing more than a form rejection listing standard reasons for denying such petitions, with check marks next to those the Commissioner considers applicable to the particular case. The petitioner may file a single request for "reconsideration" within ten days of the rejection of his petition. Such requests, however, may only be based on evidence not previously considered. *See* 8 C.F.R. § 274.19(e)-(f). Once the INS has denied the request for reconsideration, if one was filed, or the ten days has elapsed, the administrative process terminates and no further review of the INS' decisions is available in any forum.

## III. JURISDICTION AND WAIVER

 The district court dismissed most of the plaintiffs' claims on the basis of lack of jurisdiction. The parties agree that because the INA does not provide for judicial review of INS forfeiture decisions, the merits of those decisions generally fall within the agency's sphere of unreviewable discretion. *See*

*generally United States (Drug Enforcement Agency) v. One 1987 Jeep,* 972 F.2d 472, 480 (2d Cir.1992) ("The overwhelming weight of authority supports the position that a federal court lacks jurisdiction to review the merits of administrative forfeiture decisions once the administrative process has begun."); Administrative Procedures Act, 5 U.S.C. § 701(a)(2) (generally prohibiting judicial review of "agency action ... committed to agency discretion by law").[11] Therefore, if all that the plaintiffs were seeking was review in the district court of the outcome of the INS' decision-making process—namely, forfeiture or the assessment of mitigated fees and fines—the district court's jurisdictional rulings would be correct. The plaintiffs, however, do not seek review of the *merits* of any particular agency decision; instead, they challenge the INS' forfeiture process itself, alleging that the agency's procedures violate the Fourth, Fifth, and Eighth Amendments.

 A challenge to an agency's procedures on constitutional grounds may properly be brought in federal court. As the Supreme Court held in *Califano v. Sanders,* 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977):

> Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions.

*Id.* (citations omitted). Or, in Justice Harlan's words,

> a challenge to the validity of the administrative procedure itself ... presents an issue beyond the competence of the [agency] to hear and determine. Adjudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies.

*Oestereich v. Selective Serv. Sys.,* 393 U.S. 233, 242, 89 S.Ct. 414, 418, 21 L.Ed.2d 402 (1968) (Harlan, J., concurring). *Accord Johnson v. Robison,* 415 U.S. 361, 368, 94 S.Ct. 1160, 1166, 39 L.Ed.2d 389 (1974); *Public Utils. Comm'n v. United States,* 355 U.S.

---

11. There is an exception to that general rule that allows federal appellate courts to review refusals by an agency to exercise its discretion. *See, e.g., One 1987 Jeep,* 972 F.2d at 480.

534, 539, 78 S.Ct. 446, 450, 2 L.Ed.2d 470 (1958); *see also Gonzalez v. Sullivan*, 914 F.2d 1197 (9th Cir.1990) (although federal courts generally lack discretion to review decision not to reopen previously adjudicated disability benefits claims, if plaintiff "makes a colorable constitutional claim that the decision not to reopen violates the due process clause of the fifth amendment," courts do have jurisdiction).

The Seventh Circuit has explained the dichotomy between review of the merits of an agency decision and review of an administrative procedure this way:

> Courts are properly reluctant to look into complex, fact bound, discretionary determinations of an agency's decisionmaking process. But they must be equally reluctant to license "free-wheeling agencies [to mete] out their own brand of justice."

*Marozsan v. U.S.*, 852 F.2d 1469, 1477 (7th Cir.1988) (quoting *Oestereich*, 393 U.S. at 237, 89 S.Ct. at 416) (citation omitted). As the *Marozsan* court explained in the context

of the system of administering veterans' benefits, "[w]hatever the statute precludes, ... it does not preclude judicial review of the constitutionality of the legislation," 852 F.2d at 1474, or of alleged "unconstitutional administrative actions taken pursuant to that legislation." *Id.* at 1476 (explaining Supreme Court's holding in *Johnson v. Robison*, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389).

■ Accordingly, we hold that the district court erred in concluding that it lacks jurisdiction to consider the plaintiffs' claims. Alternatively, the district court held, and the INS argues on appeal, that by electing to pursue their administrative remedies rather than posting bond and invoking judicial forfeiture, the plaintiffs waived their right to judicial review of the agency's procedures and simultaneously their right to bring their underlying Fourth, Fifth, and Eighth Amendment challenges. We therefore next consider whether affirmance is appropriate on that alternative ground.[12]

12. The government principally relies upon *Sarit v. United States Drug Enforcement Admin.*, 987 F.2d 10 (1st Cir.1993), cert. denied, 510 U.S. 888, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993), and *Wiren v. Eide*, 542 F.2d 757 (9th Cir.1976), as support for that argument. In *Sarit*, the government seized and ultimately forfeited funds belonging to the appellant. In filing a belated claim of ownership, the appellant admitted that even though he did not receive actual notice of the forfeiture proceedings until after the forfeiture became final, the government had satisfied its statutory notice requirements. The First Circuit held that, in light of all the particular facts and circumstances of the case, and absent any showing of bad faith on the part of the government, the notice satisfied due process under *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Because, despite constitutionally and statutorily adequate notice, the appellant failed to pursue in a timely fashion *any remedy* available to him, he could not seek belated review *in any forum*. Thus, *Sarit* holds that the appellant's procedural default in failing to bring a timely challenge to the seizure and forfeiture in any forum, and not his choice of forum, led to the loss of his rights to contest the government's actions. While we have suggested the applicability of *Sarit*-type analysis in determining whether a belated claim in a forfeiture proceeding should be entertained when the plaintiff did not receive the notice the government sent, *see United States v. Clagett*, 3 F.3d 1355 (9th Cir.1993), that analysis is irrelevant to the question of whether the notice sent adequately informs claimants that electing administrative forfeiture constitutes a

waiver of their right to challenge the constitutionality of those proceedings.

*Wiren* is equally inapplicable in the present case. The government in its brief describes *Wiren* as standing for the proposition that, "so long as a claimant receives adequate notice of an impending forfeiture, the claimant's failure to file a timely judicial claim and cost bond 'stand[s] as a waiver of his opportunity for a hearing, thus permitting [the government] to proceed with the summary forfeiture.'" That reading of *Wiren* is wholly inaccurate, and *Wiren* is not controlling here. In *Wiren*, the plaintiff's car was seized by United States Customs agents as he crossed the border from Canada because the agents found that a passenger in the car was carrying a small amount of hashish. The plaintiff was required under customs law to post bond if he wanted to challenge the seizure; if he did not post bond, the statutory scheme provided for automatic forfeiture and sale of the car without hearing or review. 542 F.2d at 759 n. 2. *Wiren* did not address the question whether an election of remedies could constitute a waiver of constitutional rights. Instead, we held in *Wiren* that the plaintiff, an indigent, had standing to challenge the statutory bond requirement on the basis that it deprived him of his constitutional right to a hearing on the merits of his claim. Taken in context, the phrase the government quoted in its brief merely explains that, *"[a]bsent a constitutional deficiency in the application of that provision here*, Wiren's failure timely to post the bond after receiving valid notice of the proceedings would, *under the statutory scheme*, stand as

The district court's and the government's alternative argument simply cannot be correct. If it were, it would insulate the INS' policies and procedures from review even if, for example, the agency followed a policy of issuing favorable administrative forfeiture rulings to all relatives of INS officials and unfavorable rulings to all minorities. Under the INS' approach, as long as a lawful judicial procedure was provided as an option, an agency would be free to adopt and apply any administrative procedures it wished, no matter how flagrantly unconstitutional. Such a theory of unfettered, unlawful, and unreviewable agency discretion clearly conflicts with the relevant case law and the Administrative Procedures Act, not to mention the Constitution. In order to accept it, we would be required not only to repudiate the settled law concerning waivers of constitutional rights, but also to give government officials free rein to do whatever they chose, no matter how arbitrary, capricious, or clearly unconstitutional, as long as they acted in the context of administrative hearings for which a judicial alternative was offered.

■■■ The government cites no case, and we find none, holding that we lack jurisdiction to consider challenges to the constitutionality of forfeiture proceedings just because property owners elected administrative rather than judicial forfeiture. The general law governing this question is clear, however. "Constitutional rights may ordinarily be waived [only] if it can be established by clear and convincing evidence that the waiver is voluntary, knowing, and intelligent." *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1394 (9th Cir.1991), cert. denied,

501 U.S. 1252, 111 S.Ct. 2892, 115 L.Ed.2d 1057 (1991); *see also D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185, 92 S.Ct. 775, 781, 31 L.Ed.2d 124 (1972); *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938); *Leonard v. Clark*, 12 F.3d 885, 889 (9th Cir.1993). In the absence of such an evidentiary showing, "[a] waiver of constitutional right is 'not to be implied and is not lightly to be found.'" *Ostlund v. Bobb*, 825 F.2d 1371 (9th Cir.1987) (quoting *United States v. Provencio*, 554 F.2d 361, 363 (9th Cir.1977)). Moreover, in accord with the rule that acquiescence cannot be presumed in the loss of fundamental rights, *Ohio Bell Tel. Co. v. Public Utils. Comm'n*, 301 U.S. 292, 307, 57 S.Ct. 724, 731, 81 L.Ed. 1093 (1936), it is a central tenet of constitutional law that "courts indulge every reasonable presumption against waiver." *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393, 57 S.Ct. 809, 811, 81 L.Ed. 1177 (1937); *accord United States v. Gonzalez–Mendoza*, 985 F.2d 1014, 1017 (9th Cir.1993) (finding due process violation where immigration judge failed to inquire whether right to appeal was knowingly waived). Those principles apply equally to criminal and to civil cases. *See Fuentes v. Shevin*, 407 U.S. 67, 95 n. 31, 92 S.Ct. 1983, 2001, 32 L.Ed.2d 556 (1972).

■ To determine whether the plaintiffs knowingly, voluntarily, and intelligently waived their constitutional rights, we review the particular circumstances of the case and the nature of the right involved. *See Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Here, because we conclude that the rights were not waived

a waiver of his opportunity for a hearing...." *Id.* at 763 (emphasis added). We held that we had jurisdiction to examine the adequacy of the notice and the constitutionality of the bond requirement, specifically stating that, "[w]hile the remission or mitigation of lawful seizures and forfeitures [under customs law] is a matter committed to agency discretion, the determination of the propriety of the seizures and forfeitures themselves is not," and that the APA as well as the Due Process Clause conferred jurisdiction over Wiren's claims.

The government also points to *Marshall Leasing, Inc. v. United States*, 893 F.2d 1096 (9th Cir.1990). In *Marshall Leasing*, we noted the general rule that courts lack jurisdiction to review the merits of a denial of a petition for

remission or mitigation, but "we [nonetheless] concluded that the plaintiff should be able to present to the district court a claim alleging constitutionally deficient notice and seeking recovery of forfeited property." *Clagett*, 3 F.3d at 1356 (summarizing holding of *Marshall Leasing*).

In addition to the three above cases, the dissent relies on four others, all out-of-circuit cases. They generally hold that persons whose vehicles were seized under customs law and who received constitutionally adequate notice were not entitled to challenge the merits of unfavorable administrative decision in federal court. Because we conclude that the plaintiffs in the instant case did not receive constitutionally adequate notice, those cases are inapplicable. See also n. 20 *infra* at 9141.

knowingly, it is unnecessary to engage in a separate inquiry as to the "voluntary" and "intelligent" prongs.

Nothing in the record on appeal and nothing in the statutory and regulatory scheme suggests that, in choosing the administrative option instead of posting bond and invoking judicial forfeiture, the plaintiffs received any notice whatsoever that they were waiving their right to challenge the lawfulness of the process itself, let alone all of their rights under the first ten amendments to the Constitution. The INS form letter detailing the options for contesting seizures does not even hint that the choice to pursue administrative remedies would constitute such a waiver. To be sure, an individual who chooses to pursue his administrative remedies rather than his judicial ones would recognize that he is giving up some rights. It is obvious, for example, that one would forego the right to a trial by jury and would not be entitled to the full panoply of procedural protections normally afforded in the district court, including the services of an Article III judge; thus, a property owner who chooses the administrative route may not later complain that he has been unlawfully deprived of those safeguards. Nevertheless, the fact that some of the most significant features of a judicial proceeding are presumed to be absent in the administrative process in no way suggests to a property owner that in electing to pursue administrative rather than judicial remedies he forgoes all of his rights under the constitution and subjects himself to a decision-making procedure that need not be even minimally fair. Accordingly, we conclude that the plaintiffs did not knowingly waive their rights to challenge the constitutionality of the INS' policies and procedures.

■ Equally important, the government cannot justify unconstitutional administrative forfeiture procedures merely by pointing to the fact that it provides a lawful judicial forfeiture option. We have repeatedly held in criminal cases that the government cannot immunize an unconstitutional punishment from judicial review by offering individuals the opportunity to choose a constitutionally-permissible alternative. Most recently we reiterated that principle in *Campbell v.*

*Wood,* 18 F.3d 662 (9th Cir.1994) (en banc). Campbell brought an Eighth Amendment challenge to the Washington death penalty statute, which provided for death by hanging unless the defendant chose lethal injection. He claimed that death by hanging constitutes cruel and unusual punishment. The state countered that Campbell's claim was "nonjusticiable because he has the power to choose a form of execution that would render this controversy moot." *Id.* at 681. We unanimously rejected that argument en banc and then went on to consider Campbell's claim on the merits, reasoning that:

> The State's focus on Campbell's ability to choose lethal injection is misplaced. In *Dear Wing Jung v. United States,* 312 F.2d 73, 75–76 (9th Cir.1962), we rejected the argument that the government may cloak unconstitutional punishments in the mantle of "choice." We held that voluntary, permanent departure from the United States as a condition of suspending a sentence was either cruel and unusual punishment or a denial of due process. The condition did not escape review on the ground that the defendant could choose the constitutional punishment of a prison term. We have also, on many occasions, considered the constitutionality of probation conditions, although in those cases as well, the defendant could have chosen to remain incarcerated. *E.g., United States v. Terrigno,* 838 F.2d 371, 374 (9th Cir. 1988) (considering whether probation condition violated defendant's First Amendment rights); *United States v. Consuelo–Gonzalez,* 521 F.2d 259, 264 (9th Cir.1975)(considering whether probation condition violated defendant's Fourth Amendment rights).

18 F.3d at 681. Similarly, where an individual seeks a resolution of his rights vis-a-vis the government in a civil proceeding, he cannot be subjected to a wholly arbitrary and unfair process that strips him of all of his constitutional rights simply because, in order to obtain a speedier, less costly determination, he agrees to give up some of the rights that mark a formal judicial proceeding. On the contrary, the Constitution requires the government to comply with the basic tenets of

fairness regardless of the fact that the forum in which the dispute is resolved is comparatively informal. Thus, we hold that the plaintiffs did not waive their right to challenge the constitutionality of the INS' procedures by choosing administrative rather than judicial forfeiture, and that the availability of a choice does not immunize the procedures chosen from judicial review.

 Our inquiry does not end yet, however, because the government argues that we should affirm, even if the types of claims the plaintiffs raise would ordinarily be cognizable, on the ground that the claims asserted here are too insubstantial to invoke federal jurisdiction. *See Hagans v. Lavine*, 415 U.S. 528, 536–37, 94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577 (1974) ("federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit'" (citations omitted)). In addition, the district court in dismissing the plaintiffs' claims partly determined them on the merits. Specifically, it limited the plaintiffs' Fifth Amendment claims by holding that the *only* due process right to which the plaintiffs were entitled was the *timely* processing of their claims—and it concluded that the plaintiffs' Eighth Amendment claims failed because the penalties the government exacted were not grossly excessive. Because we may affirm a dismissal or a grant of summary judgment on any ground, *see, e.g., Papike v. Tambrands Inc.*, 107 F.3d 737, 744 (9th Cir.1997) (summary judgment); *American Int'l Enters., Inc. v. Federal Deposit Ins. Corp.*, 3 F.3d 1263, 1266 (9th Cir.1993) (motion to dismiss), we consider briefly the plaintiffs' Fourth and Eighth Amendment claims, and engage in a more thorough review of their Fifth Amendment claims—for in the latter case, unlike in the case of the other claims, the record is sufficiently developed and the issues fully briefed, both in the district court and on appeal.

## IV. FOURTH AMENDMENT CLAIMS

 The plaintiffs argue that their vehicles were seized in violation of their Fourth Amendment rights, their rights under the INA, and the INS' forfeiture regulations. The act and the regulations provide for seizure of a vehicle only where there is probable cause to believe that it has been or is being used for transporting illegal aliens; it further provides that vehicles seized without probable cause shall be returned to their owners. *See* 8 U.S.C. § 1324(b); 8 C.F.R. § 274.4; 8 C.F.R. § 274.5(c). The plaintiffs do not challenge the merits of any particular seizure on the basis that the INS erred in concluding that there was probable cause for the search. Instead, they claim that, although the INS is required under the constitution and the INA to make a probable cause determination, the agency uses the label "probable cause" arbitrarily and in a standardless manner, and fails as a matter of policy and practice to apply the constitutionally-mandated standards for determining whether probable cause in fact exists. As with the other claims, the district court dismissed the Fourth Amendment challenge on the bases that the court lacked jurisdiction and that the plaintiffs waived their rights in electing to pursue their administrative remedies. For the reasons we have already explained, we conclude that the district court erred in so holding. As to the government's argument that the plaintiffs' Fourth Amendment claims are insubstantial, it is evident that they are not insubstantial on their face, *see Hagans*, 415 U.S. at 536–37, 94 S.Ct. at 1378–79 and the factual record before us is not such as to permit that conclusion.

## V. FIFTH AMENDMENT CLAIMS

 The plaintiffs argue that under the Due Process Clause of the Fifth Amendment they are entitled (1) to be informed of the factual and statutory bases for the government's decisions to seize their vehicles, (2) to receive copies of adverse evidence the INS uses in connection with the forfeiture proceedings, and (3) to receive an explanation of the basis for adverse INS decisions. According to the plaintiffs, because the INS routinely and as a matter of policy fails to provide such information, vehicle owners who elect the administrative process often are unable to make effective challenges to illegal seizures and unjustified forfeitures. The district court rejected these contentions, holding that the Due Process Clause does not entitle

vehicle owners to the information sought, and that the only right to which they are entitled in an administrative forfeiture proceeding is the timely processing of their claims.

On appeal, the government advances essentially the same interpretation of the Due Process Clause that the district court adopted. It argues that the plaintiffs are entitled to bare notice that they may choose between judicial and administrative proceedings, and that if they elect administrative forfeiture they are entitled to nothing more, except for the timely processing of their claims. That niggardly reading of the Due Process Clause leads to untenable conclusions that directly conflict with established Supreme Court and Ninth Circuit precedent.

The government claims to find support for its argument primarily in one Eleventh Circuit case, *Gonzales v. Rivkind,* 858 F.2d 657 (11th Cir.1988), and also in our decision in *United States v. One 1985 Mercedes,* 917 F.2d 415 (9th Cir.1990). In its brief it argues:

> When a forfeiture claimant has the opportunity to challenge the forfeiture, "that procedure, if timely, affords a claimant *all* process to which he is constitutionally due." *Gonzales v. Rivkind,* 858 F.2d at 661 (emphasis added). In particular, "[c]ivil due process in forfeiture cases requires little more than forfeiture proceedings be commenced without unreasonable delay." *United States v. One 1985 Mercedes,* 917 F.2d at 420.

When the quotations upon which the government relies are read in context, however, it is absolutely clear that both cases were addressing only the narrow question of how quickly a forfeiture proceeding must be held, and neither stands for the broad proposition for which the government uses it.

In *One 1985 Mercedes,* we considered the question whether the property owner was entitled to an immediate post-deprivation hearing. We held that:

> in a civil forfeiture proceeding, due process does not require an immediate post-deprivation hearing, at least where judicial review of the forfeiture is available within a reasonable time. Civil due process in forfeiture cases requires little more than forfeiture proceedings be commenced without unreasonable delay.

917 F.2d at 420 (citation omitted). Thus, we held only that, with respect to the amount of time that may elapse between the seizure and the post-deprivation hearing, due process prohibits "unreasonable" delay but does not prohibit any delay whatsoever. Moreover, we limited our holding to cases in which *judicial review* of the forfeiture was available. Whether a property owner is entitled to an *immediate* hearing is irrelevant to the question what due process rights he enjoys when the hearing actually takes place, and nothing in *One 1985 Mercedes* suggests otherwise. Moreover, only four paragraphs after the clause the government quotes out of context, we specifically recognized that vindictive prosecution claims in a civil forfeiture context may raise due process questions. *Id.* We could not have reached that conclusion if the government's assertion about the holding of *One 1985 Mercedes* were correct. In *Gonzales,* the Eleventh Circuit similarly considered on the merits an independent due process challenge to a forfeiture proceeding after it had already considered a timeliness claim like the one we addressed in *One 1985 Mercedes,*[13] thus belying the government's claim that the quoted language forecloses all other types of due process challenges.

Quite apart from the fact that *One 1985 Mercedes* and *Gonzales* do not support the government's argument, the Supreme Court and this court have made it clear that a number of due process interests must be considered in the civil forfeiture context. The Supreme Court has, in fact, from the very beginning recognized a wide variety of such interests in connection with both judicial and administrative forfeitures.[14] This

---

**13.** The other claim the *Gonzales* court considered was whether certain fees imposed on an owner who wished to "compromise" his claim and obtain release of his vehicle without challenging the INS' probable cause determination violated due process.

**14.** *See, e.g., United States v. James Daniel Good Real Property,* 510 U.S. 43, 62, 114 S.Ct. 492,

court has done likewise.[15] In view of the well-settled precedent to the contrary, the government's argument that the Due Process Clause affords the plaintiffs only the right to bare notice of a choice of remedies and a timely processing of their claims is plainly erroneous.

Many of the rights afforded those contesting forfeitures flow from the fundamental principle that due process requires, at a minimum, the "opportunity to be heard ... at a meaningful time and in a meaningful manner."[16] *Goldberg v. Kelly,* 397 U.S. 254, 267, 90 S.Ct. 1011, 1019, 25 L.Ed.2d 287 (1970) (citations and internal quotations omitted). In accord with that principle, the government must provide reasonable procedures in all forfeiture contexts, including administrative proceedings. Of particular importance is the generally applicable requirement that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). We cannot conceive of any reason why this requirement would not be applicable in civil forfeiture cases.

The plaintiffs assert that at each step of the forfeiture process the notice vehicle owners receive is inadequate to permit them effectively to rebut the INS' claims. Accordingly, they contend, the INS' procedures fail to satisfy the requirements of *Mullane* and *Goldberg.* Specifically, they argue that (1) the INS' failure to give sufficient notice concerning the factual and legal bases for its seizures precludes vehicle owners from responding effectively at the "personal interview" with the immigration officer who makes the forfeiture decisions; (2) the INS' refusal to afford access to seizing officers' reports and related documentation in its internal files has a similar effect, and in addition limits their ability to prepare petitions for remission, mitigation, and reconsideration; and (3) the INS' failure to provide an explanation of the reasons for its forfeiture decisions even more drastically affects their preparation of post-forfeiture petitions. These contentions raise issues that lie at the very core of traditional due process concerns.

To be sure, many owners are present when their vehicles are seized (although, as we pointed out earlier, Mrs. Doe is one who was not), and those owners will frequently have at least a general idea of the factual basis for the seizure. Nonetheless, without knowing the exact reasons for the seizure, as well as the particular statutory provisions and regulations they are accused of having violated, they may not be able to clear up simple misunderstandings or rebut erroneous inferences drawn by the INS. Vehicle owners who are not present will, of course, frequently

---

505, 126 L.Ed.2d 490 (1993) (absent exigent circumstances, Due Process Clause prohibits *ex parte* seizure of forfeitable real property and requires notice and adversarial hearings prior to seizure); *Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 634–35, 109 S.Ct. 2646, 2657, 105 L.Ed.2d 528 (1989) (due process challenges to forfeiture statute cognizable "in specific cases of prosecutorial misconduct" or when "directed to rule that is inherently unconstitutional"); *Lambert v. California,* 355 U.S. 225, 228, 78 S.Ct. 240, 242, 2 L.Ed.2d 228 (1957) (collecting cases holding that notice is required before property interests are disturbed); *J.W. Goldsmith, Jr.-Grant Co. v. United States,* 254 U.S. 505, 512, 41 S.Ct. 189, 191, 65 L.Ed. 376 (1921) (expressly reserving question whether "property stolen from the owner or otherwise taken from him without his privity or consent" may be forfeited); *Peisch v. Ware,* 8 U.S. (4 Cranch) 347, 361–63, 2 L.Ed. 643 (1808) ("a forfeiture can only be applied to those cases in which the means that are prescribed for the prevention of a forfeiture may be employed").

15. See, e.g., *Clagett,* 3 F.3d at 1357 (property owners have right to adequate notice prior to administrative forfeiture); *United States v. Rogers,* 984 F.2d 314, 317 (1993) (recognizing possibility of due process challenge to forfeiture statute in specific case of prosecutorial misconduct); *One 1985 Mercedes,* 917 F.2d at 420 (holding that vindictive prosecution claims in civil forfeiture proceeding may raise due process questions); *Wiren,* 542 F.2d at 763 (recognizing due process right not to be denied hearing to contest seizure and forfeiture of property for persons unable to post bond).

16. Due process interests such as the one suggested by *J.W. Goldsmith,* 254 U.S. at 512, 41 S.Ct. at 191 go to issues of fundamental fairness as to the outcome of forfeiture proceedings, however, and are not limited to the fairness of the procedures employed in reaching that determination.

have even less information as to how to counter the INS' claims. Moreover, ambiguous factual circumstances may in many cases cause vehicle owners to guess incorrectly why their vehicle has been seized, thus preventing them from responding effectively to the unspecified accusations of criminal wrongdoing that underlie a forfeiture.[17]

Clearly, requiring the disclosure of the factual bases for seizures would go a long way toward preventing some of the erroneous and fundamentally unfair forfeiture decisions that inevitably flow from so haphazard a process. So, too, would requiring the giving of notice of the specific statutory provision allegedly violated, rather than allowing the mere provision, without explanation, of copies of the entire statute and regulations.[18] Similarly, furnishing owners with copies of evidence to be used against them, such as officers' reports detailing the facts upon which the claim of probable cause is based, would permit them to understand the true nature of the INS' charges and afford them a fair opportunity to prepare a proper defense to the threatened forfeiture. Finally, requiring the INS to provide statements of the reasons for its denials of relief would enable persons whose vehicles have been declared forfeited to determine whether the agency based its decision on erroneous facts, to discover whether there is evidence not previously considered that might be submitted, and to prepare reasonably informed petitions for remission, mitigation, and reconsideration.

Complying with its constitutional obligations to give adequate notice would not be unduly burdensome to the INS.[19] All that it would be required to do is provide to vehicle owners information that is already in its possession. If, contrary to the INS's view, the Due Process Clause affords more than a right to a timely decision in administrative forfeiture proceedings—as the courts have long held it does—it guarantees at least the important procedural safeguards that we have discussed herein.[20]

---

**17.** For example, the form notice Bimal Chand received from the INS did not even hint that he was being accused of illegally transporting an alien into the United States, rather than of mistakenly crossing the border without clearing customs. Because Chand stopped his car at the direction of Officer Chan, and because the officer's questioning substantially concerned the wrong turn at the border, Chand quite reasonably could have assumed that his navigational error was the actual and sole basis for the seizure. On the facts of the case as he knew them to be, it would have been reasonable for him to have challenged the forfeiture solely by arguing that he did not realize he had entered the United States, never mentioning that he had pulled off the road only because Officer Chan directed him to do so, or that Ms. Prasad was waiting in Canada for the return of Chand's father who had legally crossed the border in a separate vehicle. In so doing, however, Chand would have offered no defense to the "illegal conduct" on which the INS was relying and thus would have provided no basis on which the INS could determine that forfeiture was unnecessary, unjust, or otherwise improper.

**18.** Even if the letter of 19 C.F.R. § 162.32(b)(1) would be satisfied by the INS' attachment of the complete statute and regulations to its form letter, the agency's actions would not comport with the requirements of due process (or with the spirit of the regulations). Just as distributing full sets of the United States Code and the Code of Federal Regulations would fail to provide property owners with adequate notice of the violations they are accused of committing, so too does handing them without explanation the quantities of largely irrelevant legal materials furnished here, especially when information as to the factual bases for the charges is completely withheld.

**19.** Customs regulations already require the government to provide the owner of a vehicle seized under customs law with notice containing both "[t]he provisions of law alleged to have been violated," 19 C.F.R. § 162.31(b)(1), and "[a] description of the specific acts or omissions forming the basis of the alleged violations," 19 C.F.R. § 162.31(b)(2).

**20.** The dissent, after noting that the INA provides that the INS shall follow relevant provisions of customs law, argues that our decision here is foreclosed by some out-of-circuit cases holding that the notice provided to persons whose property was seized and forfeited under customs law was sufficient to satisfy due process, and that individuals who were provided with such notice received all the process they were due under the Fifth Amendment. As we explained above, however, the INA incorporates customs law "insofar as applicable and not inconsistent with" immigration law, see U.S.C. § 1324(b)(3). Because the INS has its own regulations governing the notice provided to persons whose property has been seized, it does not comply with the more informative notice requirements of customs law. See supra at 9122. We do not consider here whether the notice furnished under customs law

We do not purport to treat all of the plaintiffs' due process claims, and the failure to discuss particular claims in our opinion is not intended to suggest that they are less meritorious. Rather, we have selected for discussion those claims that the district court addresses and that, at this stage of the proceedings, are the most vigorously contested by the parties. We leave it to the district court to examine the remaining claims *ab initio*, including those claims relating to the presentation of witnesses and the conduct of the "hearing" or "personal interview" in general.

In view of the above, we conclude that, with respect to their due process challenge, the plaintiffs have both set forth substantial claims and presented sufficient evidence to overcome the INS' motions for dismissal and summary judgment.

## VI. EIGHTH AMENDMENT CLAIMS

The plaintiffs also claim that the forfeitures violate the Excessive Fines Clause of the Eighth Amendment. Although the district court suggested that the plaintiffs waived those claims by opting for administrative forfeiture, a conclusion we have already rejected,[21] it nonetheless considered the merits of those claims and granted summary judgment on behalf of the government. Subsequent to the district court's ruling, we issued our decision in *United States v. Real Property Located in El Dorado, Cal.*, 59 F.3d 974 (9th Cir.1995). In *El Dorado*, we explicitly rejected the approach that the district court took here, and announced a two-prong test that must be used in determining whether a forfeiture violates the Eighth Amend-

ment. We therefore reverse and remand for application of the *El Dorado* test.

## VII. CLASS CERTIFICATION

The plaintiffs' complaint describes the proposed class as consisting of:

> All persons whose vehicles have, within the INS Northern Region and within the past five years, been seized and subjected to forfeiture proceedings, or whose vehicles may in the future within the INS Northern Region be seized and subjected to forfeiture proceedings, and who have filed or may file an administrative petition for relief from forfeiture that has not been or may not be granted in full.

(ER. Tab 1; Complaint 21.) The plaintiffs seek class certification in accordance with Federal Rule of Civil Procedure 23(b)(2) and with Rule 23(b)(3), claiming that common issues of law and fact predominate, and that a class action would be superior to any other form of resolution of the controversy.[22] In particular, they allege that in seizing and forfeiting the vehicles of the members of the putative class, the defendants implement and follow general policies and procedures that are unlawful; they seek primarily injunctive and declaratory relief.

In denying class certification, the district court considered only the plaintiffs' argument for certification under Rule 23(b)(3); it does not appear to have considered the plaintiffs' Rule 23(b)(2) argument, even though that rule is the one that appears to be most clearly applicable to the plaintiffs' claims. Moreover, the district court based its dis-

---

comports with due process and reserve judgment on that question. All we decide here is that the notice used by the INS does not. We also reserve judgment as to what process, in addition to reasonable notice, is due in an administrative forfeiture context. To the extent, however, that out-of-circuit cases suggest that notice of the forfeiture proceedings prescribed by statute is a property owner's only due process interest in an administrative forfeiture proceeding, that argument is clearly inconsistent with *Goldberg v. Kelly*, 397 U.S. 254, 267, 90 S.Ct. 1011, 1019, 25 L.Ed.2d 287 (1970), and we decline to follow such cases (holding that due process requires, at a minimum, an opportunity to be heard at a meaningful time and in a meaningful manner).

**21.** *See supra* Part III.

**22.** Rule 23 provides in relevant part that an action may be maintained as a class action if:
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy....

missal on the erroneous view that it had no jurisdiction over the constitutional claims. Because we have concluded that the plaintiffs raise a number of substantial claims that go to the INS' procedures generally, rather than to the facts of any particular plaintiff's case, we vacate the district court's ruling regarding class certification and remand so that it may reexamine that ruling in light of this opinion.

## VIII. CONCLUSION

For the foregoing reasons, we reverse the district court's dismissal of the plaintiffs' claims for lack of jurisdiction and on the ground of waiver. We also reverse the grant of summary judgment and, to the extent that it did so, the district court's determination of those claims, or any part of them, on the merits.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

REAVLEY, Circuit Judge, dissenting:

I respectfully dissent because I conclude that the plaintiffs are foreclosed from pursuing this case due to their failure to pursue their statutory right to a judicial determination of their forfeiture claims. I would affirm.

The government seized the plaintiffs' vehicles under 8 U.S.C. § 1324, on grounds that the vehicles had been used to transport unauthorized aliens into the United States. Section 1324 authorizes such seizures if the government has probable cause to believe that the vehicle is being used in a violation of the statute.[1] As with the federal drug forfeiture law[2] at issue in certain cases discussed below, section 1324 provides that "the cus-

toms laws ... shall apply to seizures and forfeitures incurred" under the statute.[3]

Under the customs laws, if the property in issue is worth $500,000 or less, the government must give notice of the seizure of property to those who appear to have an interest in the property, and the owner of the property may compel a judicial forfeiture proceeding by filing a claim and posting a bond.[4] The property is automatically forfeited unless this procedure is followed.[5]

Consistent with the customs laws, federal regulations require the INS to give notice of a seizure of property to the owner.[6] The owner may compel a judicial forfeiture proceeding by filing a claim and posting a bond.[7] Failure to pursue this judicial remedy entitles the INS to declare the property forfeited,[8] subject to the administrative remedies of remission and mitigation,[9] as described by the majority. These regulations were promulgated under congressional authority.[10]

All ten plaintiffs were notified in writing of their right to commence a judicial forfeiture proceeding to challenge the forfeiture of their automobiles. None of them pursued this option. Most sought recovery of their vehicles through an informal administrative process set out by regulation,[11] which requires that the owner "shall be informed by the right to request a personal interview with an immigration officer and to present evidence to establish" that the vehicle was not subject to forfeiture or seizure, or that the owner was not legally responsible for the illegal use of the vehicle.

Plaintiffs do not dispute that they received the form notice of forfeiture from the INS. I would hold that this notice, consistent with due process, fully apprised them of their

Fed.R.Civ.P. 23(b)(2)-(3).

1. *Id.* § 1324(b)(2).

2. 21 U.S.C. § 881(d).

3. 8 U.S.C. § 1324(b)(3).

4. 19 U.S.C. § 1607–08.

5. *Id.* § 1609.

6. 8 C.F.R. § 274.8.

7. *Id.* §§ 274.10, 274.12.

8. *Id.* § 274.11.

9. *Id.* §§ 274.15, 274.16.

10. The Attorney General is authorized by statute to "establish such regulations ... as he deems necessary for carrying out his authority under the provision of this chapter." 8 U.S.C. § 1103(a)(3).

11. 8 C.F.R. § 274.5(C).

right to a judicial determination of the forfeiture matter by filing a claim and bond. The notice states that "the conveyance identified above was seized pursuant to 8 U.S.C. § 1324(b), which provides that any conveyance which has been used or is being used in violation of 8 U.S.C. § 1324(a) shall be seized and is subject to forfeiture. The above identified conveyance is subject to forfeiture." Copies of the statute and relevant regulations are attached. The notice further explains the right to judicial redress, the bond requirement, the time in which to file a claim, the right to request a waiver of the bond requirement, and the allegations that must be set forth in the claim. The notice states that "[t]he filing of a petition for other relief does not extend the time for filing a claim and bond" for judicial relief. The notice letter and attached regulations do not state or imply that, by initially seeking a personal interview or other administrative relief, the owner is foreclosed from seeking the judicial relief described in the notice.

Because plaintiffs received adequate notice of their right to seek judicial redress pursuant to the statutory scheme, and failed to avail themselves of that option, I would hold that the suit was properly dismissed. Numerous courts have reached the same conclusion.

In *Wiren v. Eide*, 542 F.2d 757 (9th Cir. 1976), the plaintiff's vehicle was seized by customs agents at the Canadian border because it contained a small quantity of hashish.[12] The plaintiff challenged the constitutionality of the seizure in a federal district court suit. We stated that plaintiff's "failure timely to post the bond after receiving valid notice of the proceedings would, under the statutory scheme, stand as a waiver of his opportunity for a hearing, thus permitting [the government] to proceed with the summary forfeiture and thereby disposing of the case in its entirety."[13] We held that the case could proceed because the plaintiff ar-

gued he was unable to post the required bond, and the statutory bond requirement cannot constitutionally be applied to those indigents unable to post it.[14] In our case there is now a procedure for waiver of the bond requirement for indigents,[15] and plaintiffs received notice of the procedure in the form notice they all received. None of the plaintiffs alleged indigent status. I would hold, under *Wiren*, that plaintiffs waived their right to a judicial determination of their claims relating to the forfeitures.

In *Marshall Leasing, Inc. v. United States*, 893 F.2d 1096 (9th Cir.1990), the plaintiff challenged the forfeiture of a vehicle seized by the Drug Enforcement Administration (DEA). We rejected the argument that the district court did not have jurisdiction to hear plaintiff's claims due to his failure to post a bond and obtain judicial forfeiture under 19 U.S.C. § 1608. Citing *Wiren*, we held that certain claims could be brought because the plaintiff claimed that he "did not receive constitutionally adequate notice of the availability of judicial forfeiture...."[16] I read *Marshall Leasing* to hold, by negative implication, that where adequate notice of the right to judicial forfeiture is given the district court lacks jurisdiction to proceed to claims advanced by these plaintiffs.

Other jurisdictions have reached the same conclusion. In *Willis v. United States*, 787 F.2d 1089 (7th Cir.1986), the court held that where a plaintiff received notice of his right to file a claim and bond pursuant to the customs laws and failed to do so, he waived his right to later complain in a federal suit that his vehicle was seized in violation of his constitutional rights.[17] In *United States v. Woodall*, 12 F.3d 791 (8th Cir.1993), the plaintiff claimed the DEA had seized his property in violation of his due process rights, and lacked probable cause to seize the property. The court held that the district court could consider whether the plaintiff had

---

12. As explained above, both the drug laws and the INS forfeiture laws incorporate the federal customs laws codified in Title 19 of the United States Code.

13. *Id.* at 763.

14. *Id.* at 763–64.

15. 8 C.F.R. § 274.10(b).

16. *Id.* at 1103.

17. *Id.* at 1093–94.

received adequate notice of the forfeiture, but that if adequate notice was established, the plaintiff waived his other claims by failing to file a timely claim and bond under 19 U.S.C. § 1608.[18]

In *Litzenberger v. United States*, 89 F.3d 818 (Fed.Cir.1996), the plaintiff brought suit alleging that the forfeiture of his vehicle violated his Fifth and Eighth Amendment rights. The court held that, so long as the plaintiff received adequate notice of his right to have the forfeiture proceedings in a judicial forum under 19 U.S.C. § 1608, the failure to pursue this statutory option constituted a waiver of the plaintiff's opportunity to assert his constitutional claims in federal court.[19] In *Linarez v. United States Dep't of Justice*, 2 F.3d 208 (7th Cir.1993), the DEA seized cash from the plaintiff. He received notice of his right to file a claim and post a bond under the customs laws and thereby institute federal judicial forfeiture proceedings. Plaintiff did not avail himself of this procedure, and instead brought a federal district court action claiming that the seizure violated his Fourth Amendment rights. The court held that the district court did not have subject matter jurisdiction:

> [W]e are convinced that Congress has precluded the possibility of concurrent jurisdiction over civil forfeitures in a district court and a federal administrative agency.... The district court remains without jurisdiction over the forfeiture *unless an interested party files a claim of interest and posts a bond with the agency* within twenty days from the date of the first publication of the notice of seizure pursuant to 19 U.S.C. § 1608 and 21 C.F.R. § 1316.76 (1992). *If the claim is not filed and the bond not posted, the forfeiture process continues administratively, without judicial intervention.*[20]

In *Sarit v. DEA*, 987 F.2d 10 (1st Cir. 1993), the DEA seized cash from the plain-

tiffs' residence. The plaintiffs received notice of their right to initiate statutory judicial foreclosure proceedings but did not pursue this option. Instead they filed a civil rights suit in federal district court claiming violation of their constitutional rights. The court noted that the suit was one against the United States, and only an express waiver of sovereign immunity will give the court jurisdiction to hear such a claim.[21] It recognized that sovereign immunity has been waived for certain forms of equitable relief under the Administrative Procedure Act (APA), but that there is no waiver under the Act where "statutes preclude judicial review."[22] While recognizing that the district court had jurisdiction to decide the adequacy of notice, the court held that once such notice was established, the suit was properly dismissed, agreeing with the district court that "plaintiffs had had the means available under the forfeiture statute to take the case to a judicial forum, and that they failed to do so."[23] The court found that the forfeiture statute precluded review under the APA.

Whether couched in terms of waiver, lack of jurisdiction, or sovereign immunity, I agree with the reasoning of the above authorities, and would hold that the plaintiffs' claims were properly dismissed. To hold otherwise allows plaintiffs to circumvent the congressional scheme for bringing such claims before a federal court, and is inconsistent with the federal government's limited waiver of sovereign immunity as to such claims.

Because of the adequacy of the notice and the waiver by the plaintiffs, I do not reach the discussion of the constitutional defects. However, if the majority is addressing facial defects of the statute, the writing is unconvincing to me. If the majority is addressing improprieties suffered by the plaintiffs at the hands of customs officials, this is not the proper forum for that consideration and

---

**18.** *Id.* at 794–95.

**19.** *Id.* at 821.

**20.** *Id.* at 211 (emphasis in original).

**21.** *Id.* at 16. In our suit as well, the claims are asserted against the United States. The only

individual defendant, the regional INS commissioner, is sued in his official capacity only.

**22.** 5 U.S.C. § 701(a)(1).

**23.** *Id.* at 17.

plaintiffs have waived their opportunity for judicial review.