**CAREER EDUCATION, INC., d/b/a ATDS–Texas, Appellant,**

v.

**DEPARTMENT OF EDUCATION, et al.**

No. 92–5119.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 7, 1993.

Decided Oct. 22, 1993.

K. Michael O'Connell, Washington, DC, argued the cause for appellant. With him on the brief were Paul D. Cullen and Daniel J. Harrold, Washington, DC.

Charles F. Flynn, Asst. U.S. Atty., Washington, DC, argued the cause for appellee. With him on the brief were J. Ramsey Johnson, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, DC.

Before: MIKVA, Chief Judge, WALD and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Appellant seeks review of the district court's grant of summary judgment to the Department of Education. The Department, it is argued, improperly decided that appellant was ineligible to participate in the federal student loan program. We vacate the district court's decision and remand with instructions to dismiss because appellant failed to exhaust administrative remedies.

**I.**

Under the Higher Education Act of 1965, a school may participate in the federal student loan program if the Department finds that it is an eligible "proprietary institution of higher education." *See* 20 U.S.C. § 1088(b) (1988); 34 C.F.R. § 600.5 (1992). Such a school must be in existence for two years, be accredited, and meet other certification standards. *See* 20 U.S.C. § 1088(b)(5); 34 C.F.R. §§ 600.5(a)(7), 600.7(a)(5)(i). In addition, the school must establish that it is "financially responsible," 34 C.F.R. § 668.13, and "administratively capable," 34 C.F.R. § 668.14, as those terms are defined by the regulations. The school must maintain these standards of eligibility in order to continue to

participate in federal student assistance programs. *See* 34 C.F.R. § 600.40(c)(2). When an eligible school changes ownership, the new owner may reestablish eligibility if the Department determines that the school is the "same institution" for purposes of the program. *See* 34 C.F.R. § 600.31.

In March 1990, Richard Crane purchased Career Education–Welding (CEW), a postsecondary school participating in the student loan program. CEW provided a welding program at its main campus in Texas City, Texas, and truck driving education at its branch campus in Fort Worth, Texas. After purchasing CEW, Crane moved the truck driving program to Prairie Hill, Texas, the location of one of his existing truck driving schools. Crane renamed the school to Career Education, Inc. (Career) and, on June 29, 1990, applied to reaffirm its eligibility in the student loan program. Crane is not a stranger to the Department. He owns and operates two other truck driving schools, ATDS–Texas and ATDS–Michigan, which themselves are unaccredited, but which participated in the student loan program through a contractual arrangement with an accredited institution, St. Mary of the Plains College in Kansas. A 1990 Department audit (the Michigan audit) determined that the arrangement violated eligibility requirements, *see* 34 C.F.R. § 600.9(d), and that St. Mary owed $94 million to the Department and ATDS owed $3 million to its students in the truck driving program. According to the Department's brief and affidavits, ATDS was not cooperative during the audit and refused to surrender records even after receiving administrative subpoenas. Because of this history, the Department proceeded "with utmost caution" in processing Career's application to reestablish eligibility. Whether motivated by scrupulous care or a desire to delay its action indefinitely, the Department failed to reach a decision on Career's application for over seven months. This delay took place notwithstanding what Career alleged is an informal "20–day rule" in processing eligibility renewal applications.

Because a substantial part of Career's revenue was attributable to the student loan program and government funding ceased while Career sought a reeligibility determination, Career was in financial difficulty. Career alleged that it was forced to cancel its welding program at its main campus at Texas City on January 25, 1991, and move its headquarters to Prairie Hill where it continued to provide truck driving training.

Career, apparently desperate, filed suit in federal district court on February 7, 1991, seeking a writ of mandamus ordering the Department to act on its application. Career's complaint alleged that the cancellation of its welding program at its main campus indicated the irreparable harm it was suffering. Three weeks later the Department acted. It found Career to be the "same institution" as CEW, just as Career had argued. Seizing upon the closure of Career's main campus, however, the Department decided that Career had violated another regulation, 34 C.F.R. § 600.40(a)(3), which provides that an institution loses eligibility if it "ceases to provide educational programs." According to the Department, under its "long-standing policy" interpreting this regulation, a branch campus loses its eligibility when the main campus closes. As a result of these findings, the Department simultaneously sent to Career a "same institution" determination, a notice of termination, *see* 34 C.F.R. §§ 600.-41(a)(1), 668.86, and a notice of emergency action, *see id.* §§ 600.41(a)(2), 668.83, terminating Career's eligibility effective immediately.

Pursuant to statutory mandate, *see* 20 U.S.C. § 1094(c)(1), the Department has promulgated extensive administrative procedures for hearing and appeal after notice of termination and for a show cause hearing after notice of an emergency action, *see* 34 C.F.R. §§ 600.41, 668.81–668.97. Although the statute does not explicitly require exhaustion of these administrative remedies, it does provide that the Secretary can make a termination decision only "after reasonable notice and opportunity for a hearing on the record." 20 U.S.C. § 1094(c)(1)(F). The Department advised Career of its administrative procedures when it notified Career of the emergency termination action.

Instead of pursuing these remedies, Career amended its complaint in the district

court on March 22, 1991, now alleging that the Department's "same institution" finding necessarily reestablished Career's eligibility. Once the Department had so determined, Career argued that the Department could not, in accordance with its own regulation, reexamine the eligibility of the school. In other words, Career claimed that the school's eligibility automatically continued under the new owner, and that if its eligibility were to be questioned it could only properly be done independent of the "same school" determination, in a termination proceeding that frontally challenges Career's financial responsibility and administrative capability. *See* 34 C.F.R. §§ 668.13, 668.14. Essentially, Career's position is that if the Department believes that Crane's ATDS schools behaved improperly with respect to the St. Mary's College contract, it should have brought the matter to a hearing and given Career an opportunity to disprove such allegations. Instead, the Department came up with a strained reading of its "same institution" regulation in order to reach the question of Career's eligibility *sua sponte,* and then decided against Career based on a legal "gotcha"—the closing of the main campus—which was allegedly caused by the Department's own delay.[1]

Although Career did reserve its right to an administrative hearing before the Department "with respect to those issues the Court does not resolve in the pending litigation," Career sought to have the district court definitively construe the Department's regulations. Thus Career moved for partial summary judgment and preliminary injunction, asking that the Department be barred from terminating its eligibility. The Department, in turn, moved to dismiss or alternatively for summary judgment, arguing that Career failed to exhaust its administrative remedies and that the court should defer to its reasonable interpretation of 34 C.F.R. § 600.31 and 34 C.F.R. § 600.40(a)(3).

The district court denied Career's motion and granted the Department's. Noting that the availability of administrative remedies barred issuance of a writ of mandamus, the court nevertheless decided much of the parties' arguments on the merits, holding that the Department's interpretation of the scope of a "same school" finding under 34 C.F.R. § 600.31 was not unreasonable; the Department could, in that context, reach eligibility issues. The court did not, however, address Career's argument that the Department's main campus closure policy under 34 C.F.R. § 600.40(a)(3) was unreasonable.

While this appeal was pending, the Department held an administrative hearing to consider Career's arguments pursuant to Career's earlier request. The administrative law judge recognized that the district court's discussion of administrative remedies in its denial of mandamus created "ambiguity as to what, if anything, remains to be determined in an administrative review." However, the ALJ held that since the court did decide the arguments on the merits, "such determinations must now be recognized and given preclusive effect under the doctrine of issue preclusion." He therefore declined to address Career's arguments, but reserved authority to reopen the hearing after the disposition of this appeal. Career appealed the ALJ's decision to the Secretary of Education, *see* 34 C.F.R. § 668.90(c)(1), but moved to stay its own appeal pending our decision.

## II.

■ This case is an administrative law mess. We certainly do not blame appellant for having brought its action in federal district court in light of the Department's rather obvious delaying tactics. *See Telecommunications Research & Action Ctr. v. FCC,* 750 F.2d 70, 79 (1984) (stating generally that agency delay may be "so egregious as to warrant mandamus"). However, mandamus is an extraordinary writ that will not issue where there exist other administrative or legal remedies. *See Chandler v. Judicial Council of Tenth Circuit,* 398 U.S. 74, 89, 90 S.Ct. 1648, 1656, 26 L.Ed.2d 100 (1970).

■ Once the Department acted on Career's reeligibility application, the district

---

1. Career, in arguments below and before us, changed course somewhat and asserted that it had not actually closed its main campus, as was alleged in the complaint, but rather moved it to Prairie Hill, in accordance with the change of address procedure in 34 C.F.R. § 600.30(a)(2).

court should have acceded to the Department's argument that the case be dismissed. At that point, no matter how tenuous the Department's interpretation of its own regulation, Career must exhaust its administrative remedies. The Department's regulations state that the notice of termination, the only agency action on Career when it filed the amended complaint, merely begins the termination proceedings, *see* 34 C.F.R. § 668.86(b)(1), and becomes final only after the requested hearing and an opportunity to appeal to· the Secretary, *see id.* § 668.90(c)(1). It is now well-settled that in such a circumstance a plaintiff must exhaust administrative remedies—in order to give the Department's top level of appeal an opportunity to place an official imprimatur on the Department's interpretation of its regulations before it is reviewed by a federal court. *See McCarthy v. Madigan,* —— U.S. ——, 112 S.Ct. 1081, 1086–87, 117 L.Ed.2d 291 (1992). *Darby v. Cisneros,* —— U.S. ——, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993), is not to the contrary. There ·the Supreme Court held only that an exhaustion requirement—in that case permitting appeal to an agency head—may not be imposed by a federal court if the administrative adjudication is otherwise final and the available appeal is only a discretionary one. *See id.* at ——, 113 S.Ct. at 2544–45.

Perhaps it is understandable that appellant wished to circumvent the administrative process and gain a quick judicial determination of the impropriety of the Department's opportunistic interpretations of its regulation and decision. Still, however sour was appellant's experience in dealing with the Department's staff (and lawyers), it cannot be assumed that recourse to an independent ALJ and the appeals process called for in the regulation would yield unfair treatment. Nor can we conclude, as appellant would have us do, that merely because the Department is vigorously litigating this case and, therefore, necessarily arguing that the Department's interpretation of its regulation is reasonable, that further administrative proceedings should be dispensed with as futile. *See McCarthy,* —— U.S. at ——, 112 S.Ct. at 1088; *Atlantic Richfield Co. v. United States Dep't of Energy,* 769 F.2d 771, 782 (D.C.Cir. 1984). The Department's litigating position at this stage does not necessarily reflect a deliberative adjudication of appellant's claims. Were we to decide otherwise the Department, faced with such a complaint and not certain whether a court would "waive" the exhaustion requirements, would be in a difficult litigating position. The Department cannot be disadvantaged for contesting in federal district court appellant's claim that the Department's interpretation of its regulation is unreasonable.

We therefore accept the Department's exhaustion argument. But we cannot pass this opportunity to express our disappointment with its tactics. To have delayed so long in responding to appellant's application makes it appear that the Department wished to destroy Career's financial capacity without giving Career a fair opportunity—"due process" is not too strong a phrase—to rebut the allegations arising from the Michigan audit. The Department's behavior evinces a certain lack of confidence in its termination decision. Then to claim, based on appellant's own complaint, that Career violated another regulation because it closed its welding school, after being deprived of federal funding by the Department's inaction, strikes us as downright shabby. Such action could be seen as an attempt to punish Career for seeking judicial redress. One might expect that government lawyers would try a bit harder to assure fairness to a private party.

\* \* \*

Accordingly, the decision below is vacated and the case is remanded with instructions to dismiss.

*So ordered.*