**CALISE BEAUTY SCHOOL, INC. d/b/a Hair Design Institute–Livingston and Westchester School of Beauty Culture, Inc., Plaintiffs,**

v.

**Richard RILEY, Secretary of the United States Department of Education, in his official capacity, Defendant.**

**No. 96 Civ. 6501 (SHS).**

United States District Court, S.D. New York.

Sept. 30, 1996.

Esther S. Trakinski, Bryan Cave, L.L.P., New York City, Ronald L. Holt, Bryan Cave, L.L.P., Kansas City, MO, for Plaintiffs.

Wendy A. Schwartz, Asst. U.S. Atty., S.D.N.Y., New York City, for Defendant.

## OPINION

STEIN, District Judge:

Plaintiffs, two vocational schools operating in the State of New York, have brought this action for declaratory and injunctive relief against Richard Riley, the United States Secretary of Education, pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, and the Higher Education Act ("HEA"), 20 U.S.C. § 1001 *et seq.* The action arises from the Secretary's decision to suspend plaintiffs from federal student loan programs administered under Title IV of the HEA. Plaintiffs seek an order setting aside the Secretary's decision and restoring their eligibility to participate in those programs. In addition, by Order to Show Cause dated

August 28, 1996, plaintiffs have moved for a preliminary injunction prohibiting the Secretary from removing them from the programs pending the outcome of this litigation. Defendant opposes this motion on the ground that the Court lacks jurisdiction to issue injunctive relief against the Secretary pursuant to Section 1082(a)(2) of the HEA. For the reasons set forth below, the motion for a preliminary injunction is denied on the ground that 20 U.S.C. § 1082(a)(2) prohibits the requested relief.

## I. BACKGROUND

The statute at issue in this case is the Higher Education Act, 20 U.S.C. § 1001 *et seq.*, and in particular the provisions relating to the administration of the Federal Family Education Loan ("FFEL") programs, 20 U.S.C. §§ 1070 *et seq.* Pursuant to the FFEL programs, students attending eligible postsecondary schools may borrow money for tuition and expenses from participating lenders, such as banks. These loans are insured by participating "guaranty agencies" which, in turn, are reinsured by the Department of Education. If a student fails to repay a FFEL loan, the lender submits all relevant records to the guaranty agency and requests reimbursement. 20 U.S.C. § 1078(b)-(c). If the guaranty agency determines that servicing and collection efforts have been properly performed by the lender, it repays the lender for the outstanding balance on the loan. 34 C.F.R. §§ 682.406(a)(1) and (3). The guaranty agency then undertakes collection efforts of its own, 34 C.F.R. § 682.410(b)(4), and, if these are unsuccessful, obtains repayment from the Department of Education. 20 U.S.C. § 1078(c); 34 C.F.R. §§ 682.100 and 682.404.

In order to keep the cost of these programs down, the Secretary of Education reviews the number of defaulted loans each year and suspends the eligibility of any school whose "cohort default rate" (CDR) exceeds 25% for three consecutive years. 20 U.S.C. § 1085(a)(2)(A). A suspended school has the right to take an administrative appeal from this decision to the Secretary, either by challenging the accuracy of the CDR calculations, 20 U.S.C. § 1085(a)(2)(i), or by showing that the Secretary erroneously included "loans which, due to improper servicing or collection, would ... result in an inaccurate or incomplete calculation" of the school's default rate. 20 U.S.C. §§ 1085(a)(3) and 1085(m)(1)(B). Specifically, a defaulted loan may not be counted against a school if the lender failed to perform certain basic due diligence functions, such as locating and contacting the borrower, or seeking preclaims assistance. 34 C.F.R. § 682.411. To determine whether such functions were properly performed, the Secretary relies on detailed servicing and collection records prepared by the lender and maintained by the guaranty agencies. 59 Fed.Reg. at 61192. These records must also be provided to any suspended school for the purpose of its administrative appeal. 20 U.S.C. § 1085(a)(3).

In this case, plaintiffs were suspended from participating in FFEL programs on the ground that their default rates exceeded 25% in 1991, 1992 and 1993. Their appeals of these decisions were subsequently denied, and they commenced this litigation. They now contend, among other claims, that the Secretary illegally authorized the relevant guaranty agency, the New York State Higher Education Services Corporation ("NYHESC"), to maintain incomplete summaries instead of proper loan servicing and collection records; that the Secretary's CDR calculations were therefore based on inadequate evidence; and that in the absence of complete records it was impossible for plaintiffs to mount an effective administrative appeal. Accordingly, plaintiffs seek a reversal of the Secretary's decision on the merits and a preliminary injunction restoring their FFEL eligibility during the pendency of this action.

The Secretary contends that this Court is precluded from granting a preliminary injunction by virtue of the HEA's "anti-injunction" clause, 20 U.S.C. § 1082(a)(2). Plaintiffs reply that this clause cannot be read as an absolute jurisdictional bar, particularly where, as here, it is alleged that the Secretary violated mandatory statutory and regulatory duties. Oral argument on this jurisdictional issue was heard on September 13, 1996.

## II. DISCUSSION

█ The threshold issue presented by plaintiffs' motion is whether this Court has jurisdiction to grant injunctive relief against the Secretary of Education. It is well settled that the federal government or its agencies may be sued only to the extent that the traditional immunity of the sovereign has been waived. *See Federal Deposit Insurance Corp. v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994). Section 1082 of the HEA provides a partial waiver of the Secretary of Education's immunity, as follows:

> In the performance of, and with respect to, the functions, powers and duties vested in him by this part, the Secretary may ... sue and be sued ... in any district court of the United States ....

20 U.S.C. § 1082(a)(2). That provision goes on to state, however, that "no ... injunction ..., mesne or final, shall be issued against the Secretary or property under the Secretary's control."

█ On its face, Section 1082 flatly prohibits the issuance of any injunction against the Secretary in relation to his powers and duties under the HEA. The language of the provision is unambiguous, and in the absence of some clear indication to the contrary, this Court must presume that Congress intended the words to mean what they say. *See Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). A literal reading of the statute is further compelled by the Supreme Court's admonition that partial waivers of sovereign immunity must be "strictly construed in favor of the United States." *Ardestani v. Immigration and Naturalization Service,* 502 U.S. 129, 137, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991) (citing *Library of Congress v. Shaw,* 4'.8 U.S. 310, 318, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986) and *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685–686, 103 S.Ct. 3274, 3277–3278, 77 L.Ed.2d 938 (1983)).

█ Section 1082 has in fact been strictly applied by numerous federal courts. *See Thomas v. Bennett,* 856 F.2d 1165, 1168 (8th Cir.1988); *Sanford Brown College v. Riley,* C.A. No. 4:94CV1251, 1994 WL 910075 (E.D.Mo. July 15, 1994); *Whayne v. Dep't of Education,* 915 F.Supp. 1143, 1145 (D.Kan. Jan. 11, 1996). Nevertheless, plaintiffs contend that an exception to Section 1082 exists in this case because a court may *always* enjoin a federal officer who acts beyond his powers, even where a statute appears to prohibit injunctive relief. *See, e.g., Canterbury Career School of Sacramento v. Riley,* No. Civ. S–93–1475 (E.D.Ca. Dec. 14, 1993) (*"Canterbury (Sacramento)"*) at 7 (relying on *Larson v. Domestic and Foreign Commerce Corp.,* 337 U.S. 682, 690–91, 69 S.Ct. 1457, 1462, 93 L.Ed. 1628 (1949) and *Manges v. Camp,* 474 F.2d 97, 99 (5th Cir.1973)); *Bartels v. Alabama Commercial College, Inc.,* 918 F.Supp. 1565, 1573–74 (N.D.Ala. 1995); *Canterbury Career School Inc. v. Riley,* 833 F.Supp. 1097, 1102 (D.N.J.1993) (*"Canterbury (New Jersey)"*); *Concorde Career Colleges, Inc. v. Riley,* 1992 U.S.Dist. Lexis 21951, at *3 (W.D.Mo. Dec. 23, 1992). *See also Ulstein Maritime v. United States,* 833 F.2d 1052, 1057 (1st Cir.1987) (Small Business Act); *Gross v. Bell Savings Bank,* 974 F.2d 403, 407 (3d Cir.1992) (Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA")). Although Section 1082 prohibits all injunctive relief that would interfere with the ordinary administrative functions of the Department of Education, it does not protect the Secretary from being enjoined when he exercises powers that are clearly outside of his statutory authority.

The dispositive issue, then, is what constitutes an action outside of authority for the purpose of Section 1082. It is plaintiffs' contention in this case that Secretary Riley exceeded his authority by violating various non-discretionary duties given to him in the HEA. Specifically, they assert that by relying on insufficient documentation, the Secretary failed to exclude improperly serviced or collected loans from his CDR calculations, in violation of 20 U.S.C. § 1085(m)(1)(B) (Complaint at ¶ 76); that by failing to ensure the provision of complete records to plaintiffs for the purpose of their appeals, he violated 20 U.S.C. § 1085(a)(3) (Complaint at ¶¶ 56 and 57); and that by authorizing NYHESC to maintain "summaries" instead of complete records, he treated students in New York

differently from students in other states, in violation of 20 U.S.C. § 1232(c) (Oral Argument Tr., Sept. 13, 1996, at 5). Defendants contend that these alleged violations, if true, would merely constitute the "improper exercise of an authorized function or power" of the Secretary, and as such would not justify an exception to the principle of sovereign immunity. Def. letter dated Sept. 10, 1996, at p. 7.

### A.

■ The question of whether the violation of mandatory duties in the calculation and publication of CDR rates constitutes action outside of the Secretary's authority—and is therefore enjoinable—has received different answers in different federal courts. *See, e.g., Canterbury (New Jersey), supra,* at 1104; *Concorde Career Colleges, Inc. v. Riley,* supra, at *5; *Climate Control Institute of Oklahoma, Inc. v. Alexander,* No. 93–C–55–E (N.D.Ok. Aug. 16, 1993), at 13–14, 1993 WL 840279 (improper calculation or publication of CDR rates is enjoinable); *American Association of Cosmetology Schools v. Riley,* No. CV96–4581–RMT (C.D.Ca. September 9, 1996), at 3; *Student Loan Fund of Idaho, Inc. v. Riley,* No. CV 94–0413–S–LMB (Magistrate Order, D.Id. Oct. 31, 1994), at 7; *Canterbury (Sacramento), supra,* at 7 (not enjoinable).

The Court of Appeals for the Second Circuit has never ruled directly on Section 1082. However, in *Volges v. Resolution Trust Corporation,* 32 F.3d 50 (2d Cir.1994), cert denied, —— U.S. ——, 115 S.Ct. 2618, 132 L.Ed.2d 860 (1995), the Second Circuit did consider an analogous anti-injunction provision in FIRREA, 12 U.S.C. § 1821(j), which states in relevant part that "no court may take any action ... to restrain or affect the exercise of powers or functions of the [Resolution Trust Corporation] as a conservator or a receiver." The issue in *Volges* was whether equitable relief could be granted, notwithstanding the terms of § 1821(j), on the ground that the RTC had violated the plaintiff's contractual rights in connection with the sale of mortgage assets under the agency's control. The district court had issued the requested injunctive relief, concluding that "the disposition of assets in violation of a ...

contract was beyond the RTC's statutory powers—in effect ultra vires—and that the anti injunction provision therefore did not shield the RTC from the court's equitable jurisdiction." *Id.* at 52.

The Court of Appeals reversed, stressing the fundamental distinction "between the exercise of a function or power that is clearly outside the statutory authority of the RTC on the one hand, and improperly or even unlawfully exercising a function or power that is clearly authorized by statute on the other ..." *Id.* at 53, quoting from *Ward v. Resolution Trust Corporation,* 996 F.2d 99, 103 (5th Cir.1993) (per curiam). Only the first type of act, the Second Circuit noted, could conceivably justify an "exception to the anti-injunction provisions of § 1821(j)." *Id.,* quoting *Ward, supra,* at 103. With regard to the facts before it on appeal, the Court found that since the RTC's actions were plainly within the scope of its enumerated powers, the fact that those actions "might violate some other provision of law does not render the anti-injunction provision inapplicable." *Id.* at 52. *See also Gross, supra,* at 408; *National Trust for Historic Preservation v. FDIC,* 995 F.2d 238, 240 (D.C.Cir.1993) (per curiam), aff'd and reinstated on reh'g, 21 F.3d 469 (D.C.Cir.1994). The Court observed that this conclusion was compelled by the language and purpose of the statute itself, for if every party to an RTC contract "could obtain injunctive relief to prevent an alleged breach, the anti-injunction mandate would be severely restricted, if not meaningless." *Id.*

The reasoning of *Volges* is adopted here. Pursuant to the HEA, Secretary Riley manifestly possesses the authority to calculate and publish cohort default rates, and to rule on CDR appeals. See *American Association of Cosmetology Schools v. Riley, supra,* at 3; *Canterbury (Sacramento), supra,* at 8. Consequently, "to the extent there is an exception to [Section 1082] in the case of a government official's conduct that exceeds his authority, that exception is of no avail here." *Id.* Plaintiffs have not alleged that Secretary Riley failed to perform his enumerated functions, but rather that in the performance of these functions he unlawfully violated a

number of nondiscretionary rules and regulations. "A government official's illegal action is not *ipso facto* beyond his delegated authority," *Canterbury (Sacramento), supra,* at 8 (citing *Larson, supra,* 337 U.S. at 695, 69 S.Ct. at 1464), and "the availability of injunctive relief does not hinge on [the court's] view of the proper exercise of otherwise-legitimate powers." *Gross, supra,* at 408. Even assuming that all of plaintiffs' allegations are true and that the Secretary did violate nondiscretionary duties, such violations would at most constitute a wrongful exercise of his proper administrative functions; they would not rise to the level of acts committed outside of his authority. Accordingly, although the Secretary's decision to suspend the plaintiffs from the FFEL programs may be set aside following judicial review pursuant to the APA, it cannot be suspended or reversed by means of injunctive relief.

*Volges* recognized that the anti-injunction provision of the FIRREA is "but part of a broader scheme" designed "to prevent courts from interfering with the RTC in the exercise of its statutory powers." *Volges, supra,* at 52. While the requirements of the RTC differ from those of the Department of Education, particularly with regard to the need for expeditious action, the general principle espoused in *Volges* is equally applicable here. Section 1082 protects the Secretary from judicial interference in his management of the FFEL programs. Although plaintiffs' administrative appeals in this case are complete, the issuance of an injunction by this Court would intrude upon the discretion of the Secretary by compelling him to underwrite debts which, by his own determination, bear an unacceptable risk of default. More broadly, under plaintiffs' proposed construction of Section 1082, every final decision to suspend a school from FFEL programs would potentially be subject to immediate judicial review, based on any number of alleged regulatory violations by the Secretary, with attendant injunctive relief prohibiting the termination of loan guarantees. Such a result "would render the anti-injunction clause a nullity and sovereign immunity meaningless. It is contrary to both law and logic to suggest that the government is pro-

tected from injunctions only so long as there is no violation to enjoin." *Canterbury (Sacramento), supra,* at 8. Accordingly, this Court finds that injunctive relief is precluded by the plain language of Section 1082 of the HEA.

**B.**

■ Plaintiffs also contend that the result reached by this Court will deprive them of due process of law because they will be left without any effective remedy against illegal actions by the Secretary. That argument is unavailing. Plaintiffs have not been left procedurally helpless by the preclusion of injunctive relief. In addition to pursuing administrative appeals, they may litigate final decisions by the Secretary under the Administrative Procedures Act, pursuant to which they may be entitled to declaratory relief. *See Thomas v. Bennett, supra,* at 1168 (8th Cir.1988); *Student Loan Marketing Ass'n v. Riley,* 907 F.Supp. 464, 474 (D.D.C.1995).

Notwithstanding plaintiffs' contentions to the contrary, declaratory relief is not an illusory remedy. A judicial ruling which sets aside an administrative decision has the direct and immediate effect of changing the CDR status of the affected institution, without an injunction being necessary. To find otherwise—that is, to adopt plaintiffs' contention that injunctive relief must be made available in challenges to final agency decisions—would cause Section 1082 to mean something it does not say, and would eviscerate the congressional policy of preventing judicial interference by injunction in the administration of the Higher Education Act.

Further support for this conclusion may be found in the 1993 amendments to the HEA. Prior to 1993, the HEA required the Secretary to exclude all improperly serviced or collected loans before publication of a school's cohort default rate, but did not provide schools with a right of appeal to correct violations of this rule. In 1993, however, the HEA was amended to provide for a guaranteed administrative appeal, and—significantly—to permit schools to remain eligible to participate in the programs during the pendency of the entire appeal process. Virtually

all of the cases in which injunctions were issued arose prior to the 1993 amendments. In light of the amendments, any need for judicial intervention by means of injunction has been alleviated, and indeed plaintiffs have pointed to no post–1993 case in which an injunction has been granted over jurisdictional objections.

## III. CONCLUSION

For the reasons set forth above, plaintiffs' motion for a preliminary injunction is denied.