**AMERICAN ASSOCIATION OF COSMETOLOGY SCHOOLS, Plaintiff–Appellant,**

v.

**Richard W. RILEY, Secretary of Education, Defendant–Appellee.**

**No. 97–55426.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 2, 1998.

Filed March 26, 1999.

Justin J. Shrenger, Hausmann & Shrenger, Los Angeles, California, for the plaintiff-appellant.

Anne M. Lobell, United States Department of Justice, Washington, D.C., for the defendant-appellee.

Ronald N. Sutter and Stanley A. Freeman, Powers, Pyle, Sutter & Verville, Washington, D.C., for the amicus.

Before: BRIGHT,* REINHARDT, and RYMER, Circuit Judges.

RYMER, Circuit Judge:

In this case the American Association of Cosmetology Schools (AACS) seeks to invalidate the appeals process applied by the Secretary of Education to schools subject to termination from certain federally guaranteed educational loan programs under Title IV of the 1965 Higher Education Act (HEA), as amended, 20 U.S.C. § 1070 *et seq.*, and to nullify appeal decisions that were adversely affected by the Secretary's application of regulations and deadlines. The district court concluded that the action seeks the equivalent of injunctive relief which is precluded by the anti-injunction provision of 20 U.S.C. § 1082(a)(2), and granted summary judgment for the Secretary. While we agree that the action may not proceed in its present form, our decision is in part for jurisdictional, and

in part for prudential, reasons. As such, neither AACS nor any individual institution is foreclosed from seeking judicial review on the ground that the Secretary's decision in a particular appeal should not stand for the same reasons AACS asserts in this action. Therefore, we affirm the judgment of dismissal, but vacate the order granting summary judgment so that it may not be mistaken as a judgment on the merits.

I

Title IV of the Higher Education Act of 1965(HEA), as amended, 20 U.S.C. §§ 1070–1099, authorizes the Secretary of Education to administer a variety of student loan and grant programs, including the Federal Family Education Loan (FFEL) programs whose purpose is to allow students to obtain federally guaranteed educational loans. Under the FFEL programs, a student receives a loan from a participating lender (usually a bank), to pay postsecondary education-related expenses such as tuition, fees and living expenses at an eligible institution. Repayment of the student loan is insured by a guaranty agency. *See* 20 U.S.C. § 1078(b)-(c). In the event of default, the guaranty agency pays the lender the unpaid portion of the outstanding loan. The Department of Education reinsures the guaranty agencies for payments made to lenders on defaulted loans. *See* 20 U.S.C. § 1078(c); 34 C.F.R. § 682.404.

Due to the increasing number of students defaulting repayment of their student loans, Congress amended the HEA in 1990 by passing the Student Loan Default Prevention Initiative Act, Title III of the Omnibus Budget Reconciliation Act of 1990, Pub.L. No. 101–508, § 3004(a), 104 Stat. 1388–25, 1388–26 (1990) (codified at 20 U.S.C. § 1085(a)(2),(3)), to reduce the number of defaulted loans by revoking the eligibility of postsecondary schools whose students had excessively high default rates. The amended HEA now ties a school's eligibility for continued participation in FFEL programs to its "cohort default rate" (CDR), the percentage of current and

---

* Honorable Myron S. Bright, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

former students that enter repayment on their loans during a given fiscal year who default before the end of the following fiscal year. *See* 20 U.S.C. § 1085(a),(m). The Secretary calculates a school's CDR by taking the number of current or former students who enter the repayment period in a given fiscal year and dividing that number by the number of those students who default by the end of the following fiscal year. *See* 20 U.S.C. § 1085(m)(1)(A). Schools whose CDRs for the three most recent fiscal years exceed a statutorily-prescribed threshold percentage are subject to termination from eligibility for FFEL participation. *See* 20 U.S.C. § 1085(a)(2)(A),(B); 34 C.F.R. § 668.17(a)(3). A school subject to termination from FFEL participation can appeal the Secretary's calculation of its CDR in one of three ways, via (1) an erroneous data appeal, *see* 20 U.S.C. § 1085(a)(2)(A)(i); (2) an improper loan servicing or collection appeal, *see* 20 U.S.C. § 1085(a)(3); or (3) an exceptional mitigating circumstances appeal, *see* 20 U.S.C. § 1085(a)(2)(A)(ii). Pursuant to statutory mandate, *see* 20 U.S.C. § 1094(c)(1), the Department has promulgated extensive administrative procedures for hearing and appeal after notice of termination. *See* 34 C.F.R. §§ 668.81–97. A school's FFEL eligibility is not terminated during the pendency of a timely and proper CDR appeal. *See* 20 U.S.C. § 1085(a)(2),(m)(1)(B); 34 C.F.R. § 668.17(b)(6).

## II

AACS is a voluntary association whose membership consists of approximately 600 cosmetology schools located throughout the United States, many of which participate in Title IV FFEL programs. In its July 15, 1996 Corrected Complaint, AACS challenges the Secretary's administration of improper loan servicing or collection appeals, and his methods of calculating CDRs and determining loan repayment dates.

The complaint alleges that the Secretary issued regulations implementing § 1085 on April 29, 1994, *see* 59 Fed.Reg. 22,278 (Apr. 29, 1994), but amended these regulations the following November to exclude defaulted loans under a different set of standards. *See* 59 Fed.Reg. 61,192 (Nov. 29, 1994).

The Secretary stated in his regulatory preamble to the November Regulations that he would apply whichever standard would be more favorable to the institution in adjudicating pending appeals. *See id.* at 61,193. However, the complaint alleges, the Secretary in fact has acted in accordance with his statement in only two CDR loan servicing appeal decisions and has otherwise applied only the standards of the November regulations. AACS also alleges that the retroactive application of the November regulations to institutional CDR appeals filed before their promulgation, and drafted under the then-governing April 1994 regulations, without adequate notice violates both due process and the notice and publication provisions of the Freedom of Information Act, 5 U.S.C. § 552(a)(1). AACS seeks a declaration that "the Secretary's application of the November 1994 regulations to FY 1992 loan servicing appeals and any other prior year loan servicing appeals pending when the November 1994 Regulations were issued, or FY 1992 appeals filed before July 1, 1995 [the effective date of the November 1994 Regulations], is illegal and in violation of the Fifth Amendment, the Administrative Procedure Act and the Freedom of Information Act."

AACS further challenges the Secretary's substantive methods of determining the date upon which student loans enter repayment for purposes of CDR calculations. Section 1078(b)(7) provides that certain loans (known as "Stafford loans") are to enter repayment on the first day after six months following a student's graduation or withdrawal from postsecondary schooling. *See* 20 U.S.C. § 1078(b)(7)(A)(i),(ii). The Secretary's regulation tracks the statutory language. *See* 34 C.F.R. § 682.209(a)(3)(i)(B) (providing certain Stafford loans enter repayment "six months following the date on which the borrower is no longer enrolled on at least a half-time basis at an eligible school"). However, AACS contends that the Secretary has, in practice, violated both the express terms of 20 U.S.C. § 1078(b)(7)(A) and his own implementing regulation by non-uniformly permitting guaranty agencies and lenders to calculate the start of repayment periods based either on the *month* following six months after the borrower withdrew from an institu-

tion, or the *month* after a borrower's grace period expired. The effect of ignoring the statute's day-specific mandate, AACS claims, is to allow loans whose repayment period should begin in the last month of one fiscal year (e.g., September of FY93) to begin instead in the first month of the following fiscal year (i.e., October of FY94). Should these students subsequently default at any point during the two following fiscal years (i.e., from October 1994, the beginning of FY94, until September 1996, the end of FY95), their default would be included by the Secretary in the institution's CDR for the previous fiscal year (i.e., FY94). AACS's complaint contends that the Secretary's failure to require a day-specific method of determining the date borrowers enter repayment is invalid as it is in contradiction of § 1078(b)(7), and that his failure to require all lenders and guarantors to follow the regulation violates § 1232(c), which requires the Secretary's regulations to be applied and enforced uniformly. It seeks a declaration that "the Secretary's failure to require uniformly a day-specific method of determining the repayment date of Stafford loans is in violation of 20 U.S.C. § 1078(b) and 20 U.S.C. § 1232(c)."

Lastly, AACS contends the erroneous data CDR appeals process fails to provide institutions challenging their CDRs with an opportunity to review and rely upon certain loan servicing documentation in preparing and prosecuting their appeals. Due to purportedly short and strict administrative deadlines, AACS alleges that institutions are required to identify all erroneous data—in both the pre-CDR publication and post-publication process—without the opportunity to review the loan servicing records of the affected borrowers. Furthermore, it avers, when an institution does discover erroneous data based on information in the loan servicing records, the Secretary's appeal procedures often preclude the institution from asserting those errors because the deadline for filing an erroneous data appeal has passed. This prevents institutions from presenting a full and complete challenge to their CDRs as required by 20 U.S.C. § 1085(a)(2), and the Administrative Procedure Act. AACS seeks a declaration that "the CDR appeal process as configured by the Secretary is in violation of

the Administrative Procedure Act, Title IV of the HEA, and the Fifth Amendment to the U.S. Constitution in that it fails to provide institutions challenging their CDR the opportunity to review and rely upon loan servicing documentation in preparing their erroneous data appeals."

In addition, AACS requests a declaratory judgment that "the adverse decisions issued against institutions who appealed their FY 1992 CDRs or prior year CDRs and whose appeals were decided exclusively under the November 29, 1994 loan servicing appeal standards are null and void," as are "all CDRs and CDR appeal decisions affected adversely by the Secretary's waiver of the day-specific method of determining the repayment date," and "all CDRs and CDR appeal decisions adversely affected by institutions' inability to review and rely upon loan servicing documentation in preparing their erroneous data appeals . . . ."

On September 3, 1996, AACS applied ex parte for a temporary restraining order and preliminary injunction, which the district court denied. The Secretary then moved to dismiss AACS's Corrected Complaint on standing and jurisdictional grounds, or alternatively for summary judgment. AACS opposed the Secretary's motion, and cross-moved for summary judgment.

The district court denied AACS's motion for summary judgment, and granted the Secretary's. This appeal timely followed.

### III

AACS argues that an action for declaratory relief is not barred by the anti-injunction provision of 20 U.S.C. § 1082(a)(2).[1] Section 1082(a)(2) is the "sue and be sued" provision of HEA which reads, in pertinent part,

(a) In the performance of, and with respect to, the functions, powers, and duties, vested in him by this part, the Secretary may—

(2) sue and be sued in any court of record of a State having general jurisdiction or in any district court of the United States, and such district courts shall have jurisdiction of civil actions arising under this part without regard to the amount in controversy, and action

---

1. In this it is supported by amicus curiae, the     Career College Association.

instituted under this subsection by or against the Secretary shall survive notwithstanding any change in the person occupying the office of the Secretary or any vacancy in that office; but *no attachment, injunction, garnishment, or other similar process,* mesne or final, shall be issued against the Secretary or property under the Secretary's control . . .

20 U.S.C. § 1082 (West Supp.1998) (emphasis added).

AACS points out that there are differences between claims for declaratory relief and injunctions, *see, e.g., Olagues v. Russoniello,* 770 F.2d 791, 803 (9th Cir.1985) (recognizing the "considerable difference between *ordering* a government official to conduct his activities in a certain manner, and simply *pronouncing* that his conduct is unlawful and *should* be corrected"), and that § 1082(a)(2) does not by its terms exclude declaratory relief from the forms of relief as to which the Secretary may "sue and be sued." AACS further submits that no such exclusion should be implied. As we see it, however, AACS's focus is largely misplaced because the district court did not hold that declaratory relief actions, as such, are barred. Neither does the government argue otherwise to us. Rather, the district court concluded that declaratory relief of the type sought by AACS is barred by the anti-injunction statute where such declaratory relief would produce the same effect as an injunction. For this reason, we have no need to decide the question that AACS argues.

Assuming that declaratory relief actions as such are not precluded by the anti-injunction statute,[2] it seems obvious that the anti-injunction bar cannot be skirted by the simple expedient of labeling an action that really seeks injunctive relief as an action for "declaratory relief." Yet this is precisely what AACS's complaint does when it asks for decisions adversely affecting member institutions to be declared null and void; if these decisions were voided and the appeals process restarted, adversely affected institutions would be reinstated to the FFEL program—despite an administrative determination having been made that they were ineligible—because they continue to participate while appeals are pending.[3] *See* 34 C.F.R. § 668.17(b)(6) (participation continues until Secretary issues decision on appeal); *see also* 20 U.S.C. § 1085(a)(2)(A) (Secretary may permit institution to continue to participate during appeal). To this extent, the relief requested is plainly coercive and therefore prohibited by the anti-injunction statute no matter what name it's given.[4]

**2.** *See, e.g., Thomas v. Bennett,* 856 F.2d 1165, 1168 (8th Cir.1988) (affirming denial of Secretary's motion to dismiss plaintiff's declaratory relief complaint in which individual taxpayer challenged a student loan-related tax offset, notwithstanding § 1082(a)(2)); *Ulstein Maritime, Ltd. v. United States,* 833 F.2d 1052, 1055–56 (1st Cir.1987) (explaining differences between declaratory judgments and injunctions and permitting request for declarative relief to proceed against SBA despite anti-injunction provision); *Bank of America NT & SA v. Riley,* 940 F.Supp. 348, 350–51 (D.D.C.1996) (declaratory relief action brought by nine banks challenging Secretary's refusal to pay $16 million in 'special allowances' not precluded by HEA), *aff'd,* 132 F.3d 1480 (D.C.Cir.1997) (unpublished opinion); *Student Loan Marketing Ass'n v. Riley,* 907 F.Supp. 464, 474 (D.D.C.1995) (refusing to dismiss for lack of jurisdiction SallieMae's declaratory relief action challenging Secretary's announced intention to apply a statutory offset fee to certain assets), *aff'd,* 104 F.3d 397 (D.C.Cir.), *cert. denied,* — U.S. —, 118 S.Ct. 295, 139 L.Ed.2d 227 (1997); *Pro Schools, Inc. v. Riley,* 824 F.Supp. 1314, 1315–16 (E.D.Wis.1993) (allowing cosmetology schools operator to challenge Secretary's termination of its FFEL eligibility in an action for declaratory relief).

**3.** Indeed, AACS sought an injunction shortly after filing its complaint for declaratory relief on the ground that it needed immediate relief because its member schools with high cohort default rates were losing their eligibility to participate in FFEL programs.

**4.** The dissent characterizes the First Circuit's holding in *Ulstein Maritime* as "rejecting" the position we adopt here, but we don't see how since the *Ulstein Maritime* plaintiffs were seeking reversal of a particular agency determination of their own rights following an administrative adjudication. 833 F.2d at 1054–56. In *Ulstein Maritime,* the district court granted plaintiffs' request for a declaration under the APA that a "certificate of competency" issued by the SBA to one of plaintiffs' competitors for a naval procurement contract was invalid. The court then set aside the SBA certificate and remanded the matter to the Navy for further consideration, and the First Circuit affirmed. The plaintiffs there were not seeking a broad declaration concerning the SBA's application of its regulations in myriad, unspecified cases as AACS does in this case by

Beyond this, we also believe it would be impossible as a practical matter for the district court to make, or enforce, a judgment on whether institutions are "adversely affected" without a complete administrative record to review. While we recognize that the complaint seeks to invalidate the entire appeals process on due process grounds, we also believe that it would be difficult if not impossible to determine whether institutions had insufficient prior notice of the November regulations to be prejudiced or were misled, as AACS argues, without an administrative record to review. Whether an institution's due process rights were violated necessarily depends on when its appeal was taken, how the Secretary responded and how the school was treated. This is equally true with respect to whether the Secretary's failure uniformly to require a day-specific method of determining repayment dates makes any difference in particular appeals, as AACS claims, or whether deadlines actually passed such that an institution could not adequately support its appeal.

As the Secretary notes, HEA provides an administrative process through which schools may challenge the Secretary's calculation of their cohort default rates. *See* 20 U.S.C. § 1085(a),(m)(1)(b); 34 C.F.R. § 668.17. Institutions may seek judicial review, but not until the Secretary has issued a decision. *See* 34 C.F.R. § 668.17(h)(3)(vii); *see also Career Education, Inc. v. Dep't of Education,* 6 F.3d 817, 820 (D.C.Cir.1993) (dismissing school's HEA lawsuit where it failed to exhaust administrative remedies first). AACS has not participated in any administrative process, yet seeks to invalidate the appeals process because of decisions that might have come out differently under a different set of procedures based on different factual determinations. We believe this is best accomplished through the ordinary channels of judicial review after final agency action.

AACS's suggestion that it, and its member institutions, will be without a remedy unless its action proceeds is not persuasive. An institution (together with AACS if it wishes to join) can seek judicial review of the correctness of the Secretary's CDR calculation

and his ultimate decision to terminate a school's participation in FFEL programs. There is no reason why the same arguments that AACS now presses cannot be made then by the adversely affected institutions, alone or with AACS's help, on constitutional or statutory grounds. *See* 20 U.S.C. § 1094(c)(1)(F) (the Secretary can make a suspension or termination decision only "after reasonable notice and opportunity for a hearing"). Indeed, AACS concedes that a single school can raise precisely the same systemic flaws it raises here. The difference, as we see it, is that following an administrative adjudication the court will have a record to review and the regulatory process—which may or may not turn out to be unfavorable to particular AACS members—will not have been unduly disrupted.

Although couched in part as a constitutional challenge to how appeals are processed, in reality AACS's challenge is not to *a* policy that has *an* outcome in *all* cases. In this respect, its challenge is quite different from that in *California Cosmetology Coalition v. Riley,* 110 F.3d 1454 (9th Cir.1997), where CCC and AACS sought (and received) a permanent injunction against the enforcement of regulations governing the amount of tuition and other fees postsecondary schools must refund when a student receiving Title IV federal aid withdraws from classes before completing the term for which those fees had been charged. CCC contended that the regulations contradicted the express language of the statute, by requiring institutions to refund a larger amount than is required under state or accrediting agency refund standards. As such, the challenge was across-the-board and could be resolved by the court without regard to how the regulation was applied. That simply is not the case here.

In sum, we agree with the district court that the nullification AACS seeks of decisions "adversely affected" by the Secretary's application of regulations or the deadlines in place for preparing certain appeals would have the same coercive effect as an injunction, and is therefore precluded by § 1082(a)(2)'s anti-injunction provision. To the extent that

seeking to nullify all administrative decisions where its member-schools were allegedly "ad-

versely affected" by the Secretary's application of its regulations.

AACS seeks to restrain the administrative appeal process as a whole, the relief sought—even assuming it is declaratory and not coercive—is practically and prudentially inappropriate without a record of what the Secretary has done in individual appeals.

We do, however, wish to be clear that neither our opinion nor the district court's order precludes a challenge on similar grounds by AACS or its member schools after final agency action has been taken. For this reason, we vacate the district court's order granting the Secretary's motion for summary judgment (which was made on the merits), and remand so that it may enter judgment dismissing the action for lack of jurisdiction. Otherwise, we affirm.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.

REINHARDT, Circuit Judge, dissenting:

The majority's conclusion that AACS's lawsuit for declaratory relief is barred by the anti-injunction provision of 20 U.S.C. § 1082(a)(2) is simply incorrect. The majority's alternative holding, that this lawsuit cannot go forward even if § 1082(a)(2) does not apply because AACS failed to exhaust administrative appeals, was not raised below by the Secretary and was therefore waived. Moreover, that holding is contrary to this court's established rule that exhaustion is not required when the agency's procedures are alleged to be illegal or unconstitutional. Our rule is particularly applicable here, where the procedure under attack is the very procedure that would have to be exhausted. For these reasons, AACS should be allowed to proceed on the merits of its claim for declaratory relief.

### I. The Anti–Injunction Provision

The majority correctly concedes that the statute does not bar declaratory actions "as such," but asserts—without citing a single case, piece of legislative history, or any other authority—that the correct test is whether the relief sought would have the *effect* of an injunction. If so, according to the majority, the suit is prohibited no matter what the plain language of the statute says. On the basis of its novel and unsupported theory, the majority asserts that the distinction between declaratory and injunctive relief is

merely semantic and reads a prohibition on certain, undefined, actions for declaratory relief into the statute.

But a declaratory judgment is *not* an injunction, and the statute, by its plain language, restricts the latter and not the former. Had Congress intended to prohibit declaratory judgments, even those that might have a "coercive" effect, along with injunctions, it plainly could have done so. It chose not to, and "[w]e must presume that Congress acts with deliberation, not inadvertence, when it drafts a statute." *United States v. Motamedi,* 767 F.2d 1403, 1406 (9th Cir.1985). The majority thus interprets § 1082(a)(2) in a manner not contemplated by Congress and not consistent with Congressional intent.

I note that the only other circuit to have considered the precise question presented by the instant litigation concluded that § 1082(a)(2) does not bar declaratory relief. *See Thomas v. Bennett,* 856 F.2d 1165, 1168 (8th Cir.1988). Several district courts have likewise held that declaratory relief does not fall within the ambit of § 1082(a)(2). *See, e.g., Bank of America NT & SA v. Riley,* 940 F.Supp. 348, 350–51 (D.D.C.1996) (concluding that declaratory relief is not precluded by HEA), *aff'd,* 132 F.3d 1480 (D.C.Cir.1997); *Student Loan Marketing Ass'n v. Riley,* 907 F.Supp. 464, 474 (D.D.C.1995) (collecting cases), *aff'd,* 104 F.3d 397 (D.C.Cir.), *cert. denied,* — U.S. —, 118 S.Ct. 295, 139 L.Ed.2d 227 (1997); *Pro Schools, Inc. v. Riley,* 824 F.Supp. 1314, 1315–16 (E.D.Wis. 1993) (dismissing claim for injunction but allowing claim for declaratory relief to proceed).

Other courts have elaborated on the differences between declaratory and injunctive remedies in analogous contexts. For example, the First Circuit, in *Ulstein Maritime Ltd. v. United States,* 833 F.2d 1052 (1st Cir.1987), held that a provision of the Small Business Act that is identical to § 1082(a)(2) did not bar declaratory relief. In rejecting the position adopted by the majority here, the First Circuit held that

An injunction is a coercive order by a court directing a party to do or refrain from doing something, and applies to future ac-

tions. A declaratory judgment states the existing legal rights in a controversy, but does not, in itself, coerce any party or enjoin any future action ... [it is] a milder remedy which is frequently available in situations where an injunction is unavailable or inappropriate.

*Id.* at 1055. *See also Calise Beauty School, Inc. v. Riley,* 941 F.Supp. 425, 430 (S.D.N.Y. 1996) (noting that a declaratory judgment is not the equivalent of an injunction). In fact, no other federal court examining the issue has concluded, as the majority does here, that a declaratory judgment can be the functional equivalent of an injunction. Instead, courts have relied on the differences between the two types of relief and the ways in which they are distinct—ways, presumably, known to Congress. It is no doubt for that reason that the majority fails to cite a single case in support of its unique and unprecedented construction of the anti-injunction provision.

Even if the majority were correct that some declaratory judgments (those with so-called "coercive effect") are barred by § 1082(a)(2), there is an exception to the "anti-injunction" rule that would allow AACS to go forward. This court recently held that where the plaintiff alleges that the Secretary has clearly exceeded his statutory authority in the execution of his duties, the court may grant injunctive relief notwithstanding § 1082(a)(2). *California Cosmetology Coalition v. Riley,* 110 F.3d 1454, 1461 (9th Cir. 1997) (affirming a grant of preliminary injunctive relief where the plaintiff alleged that the Secretary exceeded his authority in implementing and applying DOE regulations). Here the majority reaches a directly opposite result.

There is no meaningful distinction between the allegations in this case and in *California Cosmetology,* a case in which AACS was, not incidentally, also a plaintiff. In both cases, the plaintiffs were associations of beauty schools, complaining that the Secretary was illegally implementing and applying regulations promulgated pursuant to the HEA. In both cases, the beauty schools alleged that the Secretary's illegal action affected the ability of their students to obtain federal financial aid, and that these allegedly illegal restrictions threatened to put them out of business. *California Cosmetology* clearly

stands for the proposition that injunctive relief is available in such situations, § 1082(a)(2) notwithstanding. Therefore, even if we construe AACS's suit as one for injunctive relief, it still states a claim for which relief can be granted and dismissal is improper.

## II. Administrative Exhaustion

Ultimately, the majority offers an alternative holding as well, suggesting that AACS, and the member schools it represents, are required to exhaust administrative remedies before seeking relief in the courts. The majority contends that without a factual record showing the way in which the Secretary applies his procedures in individual cases, it would be difficult for the district court to determine the nature of the Secretary's practices and whether they constitute a reasonable exercise of the agency's discretion. I disagree.

First, this argument is raised for the first time on appeal. As a general rule, we do not consider an issue not presented below. *Bolker v. Commissioner,* 760 F.2d 1039, 1042 (9th Cir.1985). In this circuit, there are three recognized exceptions to this rule: we will consider issues not argued below in exceptional cases to prevent a miscarriage of justice or preserve the integrity of the judicial process, when a new issue arises while appeal is pending due to a change in the law, or when the issue is purely one of law and does not depend on the factual record. *See United States v. Greger,* 716 F.2d 1275, 1277 (9th Cir.1983); *United States v. Whitten,* 706 F.2d 1000, 1012 (9th Cir.1983); *United States v. Patrin,* 575 F.2d 708, 712 (9th Cir.1978). Unless one of these exceptions obtains, we do not consider an issue that was not properly raised. *Bolker,* 760 F.2d at 1042.

In this case, the Secretary does not even assert that any of the three exceptions applies and offers no explanation or justification for his failure to raise the issue below. This is likely because there is none. In its haste to affirm the district court's erroneous ruling, the majority disregards our precedents and proceeds to resolve issues not raised below without offering any reason for

doing so or acknowledging that it is ignoring our well-established rule.

Second, even if the exhaustion issue had not been waived, it is meritless. This is so because AACS challenges the entire administrative appeal process rather than a specific outcome in a particular case. In order to understand why exhaustion is not required, it is necessary to review briefly some of the facts of this case.

Every year, the Secretary calculates and publishes a cohort default rate for each school that participates in federally guaranteed student loan programs. The cohort default rate is an effort by the government to determine which schools have the highest rates of student loan defaults and to punish these schools when the defaults can reasonably be attributed to the school's decision-making. Schools with the highest published cohort default rates are not eligible to participate in many of the government financial aid programs.

Most schools, particularly those serving disadvantaged, urban populations, cannot operate without the cash provided by these government programs; the calculation of the cohort default rate is thus critical to their survival. As might be imagined, then, the Secretary's calculations are highly contested by schools that are threatened with the loss of eligibility. In particular, many schools complained that they were being held responsible for defaults which were actually caused by improper loan servicing and collections by lenders. Because of complaints about the Secretary's calculations, Congress amended the Higher Education Act in 1993 to allow schools to appeal the Secretary's calculation. 20 U.S.C. § 1083(a)(3), (m)(1)(B) (Supp.1997). In particular, the new law specified that the Secretary is required to *exclude* from the cohort default rate any loans defaulted as a result of improper loan servicing or collections.

The Secretary issued interim final regulations pursuant to the new legislation in April, 1994. 59 Fed.Reg. 22, 278 (April 29, 1994). These regulations set forth the procedures that institutions must follow when appealing the Secretary's calculation of a cohort default rate. Pursuant to these regulations, schools challenging a calculation had to show that defaulted loans were incorrectly included in the school's cohort default rate because improper servicing or collection caused the default. The regulations specified that a loan default is only caused by improper servicing or collection when there was no notice to the borrower that he must begin repayment. The regulations permitted schools to amend their appeals for past years to conform to the April regulations.

Then, in November, 1994, following the close of the "comment" period on the April regulations, the Secretary issued final regulations. 59 Fed.Reg. 61,192 (Nov. 29, 1994). These regulations provided a completely different standard for proving that a loan was defaulted as a result of improper servicing or collection. Under the November regulations, a loan default is only considered to have been "caused by" improper loan servicing or collections if the school can prove one or more of the following: (1) no letter was sent to the borrower; (2) no attempt was made to reach the borrower by phone; (3) the financial institution failed to request assistance from the guaranty agency; (4) a final demand letter was not sent to the borrower; and (5) skip tracing was not initiated if the borrower could not be located.

In the preamble to the November regulations, the Secretary stated that the reason for the change was that the test for whether a default was caused by improper servicing or collection specified in the April regulations made the adjudication of appeals too time-consuming for the Secretary. Moreover, the Secretary asserted that the new standard should make it easier for schools to show errors in a cohort default rate, but that he would apply "whichever standard would be more favorable to the institution."

AACS contends, however, in Counts 1 and 2 of its complaint that the November standard is, in fact, more difficult—not easier—for schools to satisfy, and that the Secretary has refused to apply the more favorable of the two tests, and is instead applying only the November standard. AACS further argues that schools that initially amended their appeals for 1989–1991 (as the April regulations instructed them to do) were disadvantaged by the subsequent announcement of

the November standard. According to AACS, the Secretary refused to allow these schools to further amend their appeals to conform with the November requirements.

AACS also complains in Counts 4 and 5 that the erroneous data appeals process does not give schools an adequate opportunity to review data and loan servicing records in order to identify any mistakes in the calculation of the schools' cohort default rate. Count 4 alleges that this practice violates both the Higher Education Act and the APA, and Count 5 alleges that it violates due process. AACS furthermore contends that the Secretary has stated, in "Enclosure One" to his recent appeal decision letters, that he will not consider any arguments about this practice in the context of administrative appeals.

In addition to these complaints about the appeals process itself, AACS asserts in Count 3 that the Secretary's practice of determining when a loan enters repayment violates the plain meaning of the statute governing such calculations. AACS contends that the statute and regulations require the Secretary to make a day-specific determination: a loan enters repayment on the first day after the expiration of a six-month grace period. AACS is correct. The statute clearly provides that "the repayment period ... shall begin (i) the day after 6 months after the student" is no longer in school on at least a one-half time basis. 29 U.S.C. § 1078(b)(7). Despite that unambiguous directive from Congress, AACS asserts that the Secretary has allowed lenders to make a "month specific" calculation that results in a different cohort default rate. AACS further points out that the Secretary admitted in a 1996 "Dear Colleague" interpretive guidance letter that it is using the allegedly illegal procedure and that it intends to continue that practice.

In view of these facts, it is clear that all of AACS's claims may properly be brought directly in federal court and that no administrative hearing is necessary or even appropriate. It appears that the majority misapprehends the purpose of administrative exhaustion, which is to allow agencies to adjudicate "complex, fact bound, discretionary determinations" within the particular competence of the agency. *Gete v. Immigration and Naturalization Serv.*, 121 F.3d 1285, 1292 (9th Cir.1997). This is not such a case.

In *Gete*, aliens whose cars were seized by the INS brought a constitutional challenge to the agency's forfeiture process. The INS, like the majority here, contended that the court lacked jurisdiction to consider the claims because the claimants had not exhausted their administrative remedies. This court found that there was jurisdiction, pointing to the difference between "review of the merits of an agency decision [to seize a particular car] and review of an administrative procedure." *Id.* (citing *Marozsan v. United States*, 852 F.2d 1469, 1477 (7th Cir.1988)).

Similarly, this lawsuit challenges the Secretary's procedures and the appeal process itself, rather than a specific outcome in a particular case. Without acknowledging it, the majority overrules the district court on this point. In fact, the majority's alternative holding directly contravenes the district court's conclusion. In determining that AACS met the requirements for associational standing, the district court held:

> the claims asserted are that the DOE is improperly calculating CDR's, improperly determining loan repayment dates, and providing a flawed appeal process. Plaintiff's burden would be to prove how the formula the Secretary is using to calculate CDR's and the method the Secretary is using to determine loan repayment dates violate the law and how the appeal process is legally flawed. *Although specific examples of how CDR's are being calculated are used, this does not require proof of how the CDR of each member of plaintiff is calculated.* Such individual calculation is not necessary to determine which schools have been injured. Injury, for purposes of declaratory relief, will be proved if plaintiff proves the formula used in calculating CDR's, the method used in determining loan repayment dates, or the appeal process provided by the Secretary violates the law.

(emphasis added). The district court concluded that "[s]uch declaratory relief can be awarded without individual participation of plaintiff's members." I agree with the district court, and for similar reasons, conclude

that there is no need for AACS and its members to pursue administrative appeals.

The federal courts universally dispense with the exhaustion requirement in situations where the very administrative procedure under attack is the one that the agency says must be exhausted. *Barry v. Barchi,* 443 U.S. 55, 65 n. 10, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979) ("exhaustion of administrative remedies is not required when 'the question of the adequacy of the administrative remedy ... [is] for all practical purposes identical with the merits of [the plaintiff's] lawsuit.' "); *Gete v. Immigration and Naturalization Serv.,* 121 F.3d 1285, 1291 (9th Cir.1997); *accord, Finnerty v. Cowen,* 508 F.2d 979, 983 (2d Cir.1974) (collecting cases). Neither is exhaustion required where it would be futile. *Aleknagik Natives Ltd. v. Andrus,* 648 F.2d 496, 500 (9th Cir.1981) (holding that no administrative exhaustion was required where it would be "meaningless as a practical matter."). AACS's challenge is to the appeals process itself—a process that no administrative law judge has the power to review or invalidate. Obviously, administrative review of these claims would be entirely pointless.

Because this issue was raised for the first time on appeal, the district court has not yet had the opportunity to consider the specific question whether exhaustion of individual claims is necessary with respect to any of AACS's claims, though the district court's treatment of the associational standing question sheds substantial light on the way it would view the exhaustion question. Even if the district court were to determine, however, that a factual record is required before it could decide certain claims, jurisdiction still exists to hear the remainder of the complaint. In *Aleknagik,* an association of native village corporations sued to enjoin the Secretary of the Interior from using allegedly illegal procedures for allocating public lands to non-natives. The Interior Secretary asserted that some of the natives' claims were fact-intensive and required the development of an administrative record. We concluded that any factual claims were subsidiary to the natives' primary challenge to the procedures themselves. Instead of dismissing the entire

matter, we remanded the case to permit the district court to determine whether exhaustion was required on the specific factual claims, while ordering it to exercise its jurisdiction regarding the overall challenge to the procedures. That is, at very least, the course we should follow here—although in my view there is no applicable exhaustion requirement at all and the case should proceed on all five counts.

Accordingly, I would reverse the grant of summary judgment and remand the case for further proceedings consistent with the analysis set forth above.